## BELLOWS *vs.* SACKETT.

Although the owner of land has a right to erect a house thereon, to cover it with a roof which will prevent the rains from falling upon the surface it covers, and to turn the water falling upon such roof, upon any portion of his own soil, at any point and in any quantity he may choose, yet for any diversion or interruption, to the manifest injury of another, he is responsible.

Thus where the eaves of the defendant's building came within about two feet of a dwelling house, erected by the plaintiff upon his lot adjacent, and owing to a want of suitable repairs to the gutter of the defendant's building, the water from his roof fell between the buildings, and by percolation found its way into the plaintiff's cellar, through the wall, to the injury of his wall, and the lower timbers of his house; *Held*, that an action would lie; although it did not appear whether the water from the defendant's roof actually fell upon his own land, or not.

It *seems* that such an action may be brought against the owner of the building, as the one who keeps up and maintains the erection which causes the injury, whoever may be the temporary occupant under him.

To render the objection that such action should have been brought against the tenant in possession, available, it should be shown that the tenant was bound to make repairs.

Where evidence offered, on a trial before a justice, is objected to and excluded, and neither the grounds of the objection, nor the object of the proof, is stated, and the court, on appeal, can see that a good objection might have been taken, it will presume that the proper objection was taken, and the decision made upon that ground.

So where evidence is admitted by the justice, after objection, and it appears from the return that the objection was general, and the court can see that

Bellows v. Sackett.

the subject matter of the evidence was proper, and that only the manner of proving such facts was objectionable, it will presume that no objection was made to the manner of proving the fact, but that the party objected to any proof of such fact.

Where title to real estate is not pleaded, before a justice, he will not be ousted of his jurisdiction merely because it may be necessary to prove title, in order to sustain the action; unless such title is disputed by the defendant.

THIS action was commenced before a justice of the peace, and was tried before the justice and a jury, December 20, 1850. The plaintiff complained in writing for injury done to his dwelling house, by reason of the water which fell or ran from the roof of a house alleged by the plaintiff to be the defendant's, which was next to the plaintiff's house, and within about one foot thereof, which water ran through the cellar wall of plaintiff's house into his cellar, and under the wall of his house, which had caused the wall of said plaintiff's house to settle and crack open, the stone sills and caps and stone columns of said building to break, and the ceilings to crack open and the timbers to rot and decay, to the damage of the plaintiff of one hundred dollars. The defendant, who appeared in person, answered orally, and first pleaded the general issue and denied the said plaintiff's complaint in every respect and particular; and also that the water that fell from the roof of said building fell upon land of the said defendant, and not upon the premises of the plaintiff. On the adjourned day, after the plaintiff opened his case to the jury, the defendant's counsel moved the justice to dismiss the action, on the ground that from the plaintiff's own showing, the title to real property was in question, such title being asserted by the plaintiff, and disputed by the defendant, which motion was denied by the justice, and the action proceeded to trial. On the trial it was proved that a small one and a half story wood building, called the defendant's, was situate on the north side of Fall-street, in the village of Seneca Falls, and that it had been built and had stood as it stood when this action was commenced, about twenty-five years; that some fourteen or fifteen years before the commencement of this action, the plaintiff erected a large three story brick building, exclusive of basement

on the eastern and lower side of the wood building, and within about eighteen inches therefrom. The solid gable end of the plaintiff's brick building faced the east side of the wood building, the roof of which ran north and south. The plaintiff's water table was at this end on a level with the ground. The plaintiff's cellar was about two feet lower than the cellar of the wood building, and the ground between the buildings was the lowest at about the middle of the wood building, and much of the water which ran off, and down the east side of the wood building, together with the water which beat back from the end of the plaintiff's building, collected in the low place in the space between the two buildings, and percolated in its natural flow east through the plaintiff's cellar wall into his cellar. A witness called by the defendant, who was a builder, testified that a quantity of gravel or other substance banked in between the buildings would have caused the water to flow into the street, and saved the plaintiff's building from injury, and that the plaintiff had taken no precaution whatever to protect his building. Plaintiff had made no complaint to defendant. It further appeared from the plaintiff's evidence, that the defendant had not occupied the wood building for twelve years, but that it had been, and was at the time of the injuries complained of, and of the commencement of this action, in the possession of tenants. The title to, and the occupancy of, the space of ground between the buildings was not shown. On the cross-examination of the defendant, who was the last witness called and sworn by the plaintiff, the defendant's counsel asked the witness "if the plaintiff claimed title to, or control of, the alley between the buildings, and of the east part of the wood building called defendant's? The plaintiff objected to defendant's answering the question, and the objection was sustained by the court. The question as to the jurisdiction of the justice was raised by the defendant, on the plaintiff's showing, in several ways. The first question put by the plaintiff's counsel, on the direct examination of the plaintiff's first witness, was, "do the parties own buildings adjoining each other?" The question was objected to by the defendant's counsel, and the objection was overruled by the justice, and the wit-

Bellows *v.* Sackett.

ness answered "they do, the plaintiff claims ownership of the second building from the corner of the street." This answer was objected to by the defendant's counsel, and the objection was overruled by the justice. Subsequently the defendant's counsel objected to any testimony being received as to the ownership of either of the buildings spoken of, and in regard to any injury sustained by the plaintiff, except to his occupancy or possession, which objection was also overruled by the justice. The defendant also objected to all the testimony offered by the plaintiff, in regard to the opinion of the witnesses as to the injury done the plaintiff's building, and the consequent supposed damages to the real property, which objection was also overruled by the justice. When the plaintiff closed his proofs, the defendant moved that the plaintiff be nonsuited, which motion was denied. The jury found a verdict for the plaintiff for sixty-three dollars, and the justice rendered judgment against the defendant, for sixty-three dollars damages and four dollars and ninety-four cents costs. The defendant appealed to the county court of Seneca county, which court affirmed the judgment of the justice, and judgment was entered against the defendant for seventy-one dollars and sixty-seven cents damages, and fourteen dollars and thirty-five cents costs. From the judgment of the county court the defendant appealed to this court.

*J. T. Miller*, for the appellant.

*E. Foote*, for the defendant.

*By the Court*, JOHNSON, J. The defendant erected a dwelling house on his lot in the village of Seneca Falls, about twenty-five years before the commencement of this suit. About ten years thereafter the plaintiff erected his dwelling upon his lot adjacent. The eaves of the defendant's building came within about two feet of the plaintiff's. The water from the defendant's roof, on the east side, fell between the buildings, and by percolation found its way into the plaintiff's cellar through the cellar wall, to the injury of his wall and the lower timbers of

the building.  The case does not show whether the water from the defendant's roof actually fell upon his own land or not.  The county judge assumed that it fell upon the defendant's own land.  The particular injury complained of was occasioned by the defendant's eave trough or gutter having become so old and leaky that it did not carry off the water as formerly, but the whole water from the roof on that side ran through the bottom, near the center of the trough or gutter, and fell upon the ground in a comparatively narrow space between the buildings.  The first question which arises is, whether the action can be maintained, in such a case.  No principle is more firmly established than that contained in the familiar maxim, *sic utere tuo ut alienum non lædas*, but its proper application to particular cases is often found quite difficult.  And it will be found perhaps still more difficult, on a critical examination, to reconcile all the cases where the application has been attempted.

I shall not undertake to review or reconcile the numerous cases on this subject, but endeavor to deduce from them some general principle applicable to the facts of this case.  If the defendant's roof overhung the plaintiff's building or soil, so as to throw water directly upon it, there could be no question but that the action would lie ; the injury would be direct.  But the case does not show this ; and we are to assume, I apprehend, that the water falls upon the defendant's own land and the injury is consequential.  The proof, however, shows that the plaintiff's premises are the lowest, and that water naturally flows from the defendant's land to the plaintiff's.

It has been held repeatedly, and I believe uniformly, that every person has the right to improve his own land, and if in digging to make such improvement upon his own land, he injure the foundation of the building of another upon adjoining premises, who had built so near the line that his foundation and building could not stand without the support of the land of such person thus excavating for his improvement, no action would lie for such injury ; and so if in thus digging he casually drained the water from a well upon the neighboring premises.  For it was the fault of the other to build or dig so near the dividing

line that his improvement could not be supported without the aid of the adjacent soil, and he had no right to require the adjacent owner to desist or refrain from improving his own, for his benefit or security. (2 *Roll. Abr. Trespass*, (1), *pl.* 1. *Patridge* v. *Scott*, 3 *M. & W.* 220, 228. *Acton* v. *Blundell*, 12 *Id.* 352. *Wyatt* v. *Harrison*, 3 *Barn. & Adolph.* 871. *Thurston* v. *Hancock*, 12 *Mass. Rep.* 220. *Panton* v. *Holland*, 17 *John.* 92. *Lasala* v. *Holbrook*, 4 *Paige*, 169. *Radcliff's Ex'rs* v. *Mayor of Brooklyn*, 4 *Comst.* 195.) Though if the natural soil, independent of the superincumbent addition of the improvement, from the adjacent lot, fall in, in consequence of such excavations, the person making the excavation is liable for such damage, upon the ground that he is bound so to use his own as not to injure the property of another in its natural condition. Even this, however, is questioned by Bronson, justice, in *Radcliff's Ex'rs* v. *Mayor of Brooklyn*. This was substantially the rule of the civil law. (1 *Domat*, 615.)

Parker, chief justice, in *Thurston* v. *Hancock*, said that it was "a common principle of the civil and the common law, that the proprietor of land, unless restrained by covenant or custom, has the entire dominion, not only of the soil, but of the space above and below the surface, to any extent he may choose to occupy it." To these and all like cases the maxim has been held not to apply. Nor is this case analogous strictly to that of a nuisance, where it is always held that the action will lie although the person inflicting the injury confined himself to his own premises; because the injurious consequences are felt beyond the limits of his own land. The erection itself here is lawful and proper. Each party has an equal right, and neither can claim any advantage by reason of long user. The case is more analogous to that of diverting or obstructing the natural flow of a stream of water upon the surface, by means of which adjacent premises are injured by the percolation of the water through the soil.

The rule of the civil law was, that "rain water or other waters which have their course regulated from one ground to another, whether it be by the nature of the place, or by some regulation,

Bellows *v.* Sackett.

or by a title, or by an ancient possession, the proprietors of the said grounds cannot innovate any thing as to the ancient course of the waters. Thus he who has the upper grounds cannot change the course of the water either by turning it some other way or rendering it more rapid, or making any other changes in it to the prejudice of the owner of the lower grounds." (*Domat*, 616, *Cushing's ed.*)

This is substantially the rule of the common law, and it applies, I apprehend, equally to flowing streams and descending rains, though not to streams flowing beneath the surface, the courses and fountains of which do not lie open to observation and cannot be traced.

Here the defendant had the clear right to erect his house, to cover it with a roof, which would prevent the rains from falling upon the surface it covered, and to turn the water falling upon such roof, upon any portion of his own soil, at any point and in any quantity he might choose. But for such interruption or diversion, to the manifest injury of another, he is clearly responsible. Here, owing to a want of suitable repairs, the water falling upon an area of 25 feet by 13, is collected at a single point and precipitated in an unnatural and unusual quantity and manner so near the plaintiff's premises as necessarily to cause him an injury. It is said on the part of the defendant that the plaintiff might have prevented the injury by a suitable embankment between the buildings, and that by neglecting to make such embankment or to take any other precautions to prevent the water flowing through his wall, he is to be regarded as contributing in some degree to the injury, and cannot therefore recover. But I do not see that the principle applies in a case like this. For aught that appears, the plaintiff's building was sufficiently protected for all ordinary purposes, and certainly he has contributed nothing to the wrongful precipitation of the water by which the injury was occasioned. The aggressor can never say that it was the duty of the assailed to ward off the blow unlawfully aimed at him. But if the principle could be held to apply, the verdict of the jury has settled the question in favor of the plaintiff.

· But it is objected that the justice had no jurisdiction to try

the cause, inasmuch as the defendant was not in possession, and that in order to make him liable it was necessary to prove his title, so that it appeared from the plaintiff's own showing that the title to the land was in question. But it does not appear from the case that the defendant disputed his title to the premises ; and where title is not pleaded before the justice, he is not ousted of his jurisdiction, because it may be necessary to prove title ; unless such title shall be disputed by the defendant. (2 *R. S.* 168, § 63, 2d ed.   *Koon* v. *Mazuzan,* 6 *Hill,* 44. *Browne* v. *Scofield,* 8 *Barb.* 241.)

Again ; it is urged that the action cannot be maintained against the landlord, but should have been brought against the tenant in possession.  But to make this objection available to the defendant, I think he should have shown that such tenant was bound to make repairs.  The character of the tenancy is not shown, and in the absence of all proof, I think we are not bound to presume, in this country, at least, that the tenant was bound, as between him and his landlord, to make the repairs. But however this may be, I am inclined to the opinion, that in any event, the plaintiff may resort directly to the owner, as the one who keeps up and maintains the erection, which causes the injury, whoever may be the temporary occupant under him.   I think the defendant cannot object that he was not allowed to prove by the witness Sackett, that the plaintiff claimed the ownership of the space between the two buildings.  If he had established that fact, he would inevitably have established a cause of action against himself.   But the offer went further, and included the proposition to prove that the plaintiff claimed to own the east side of the building called the defendant's, also.

The evidence was objected to, and the offer overruled by the justice.   Neither the ground of the objection, nor the object of the proof offered, are disclosed by the return.   Of course the plaintiff's claim was nothing, unless he had title, or was in fact in possession and had control of the building.   Title could not be proved by parol if objected to, and it cannot be, and obviously was not pretended, that the plaintiff was in possession of the defendant's building.

Where evidence offered is objected to and excluded, and neither the grounds of the objection, nor the object of the proof is stated, and the court can see that a good objection might have been taken, it will presume that the proper objection was taken, and the decision made upon that ground.

And so where evidence is admitted by the justice after objection, and it appears from the return that the objection was general, and the court can see that the subject matter of the evidence was proper, and the manner of proving such facts, only, was objectionable, it will presume that no objection was made to the manner of proving the fact, but that it was made to any proof of such fact. All the presumptions are in favor of the correctness of the proceedings of the court below, and it is for the party alleging error, to make it clearly appear. 'This rule. applies to the testimony of the witnesses by whom the injury and the damages were proved. Thus in the case of the witness Seigfield, who is a mason, after he had described the effect produced by the water upon the joists and the wall, he was asked what damage had been done to the building by the rotting of the joists and the cracking and injury to the cellar wall. To this the defendant objected generally. If he had objected that damages could not be proved in that way, by the opinion or judgment of the witness, the objection would have been good. But as it stands, it is a mere objection to the proof of damages at all. The same observations apply to the next objection, stated in the return, to evidence of a similar character. The ground of the objection does not appear.

On the whole, I am of opinion that no error has been committed, and that the judgment of the county court must be affirmed.

[MONROE GENERAL TERM, March 7, 1853    *Selden, T. R. Strong* and *Johnson*, Justices.]