[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 336 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 337 
The motion for a nonsuit on the plaintiff's evidence, and the exceptions to the charge of the court, raise the questions: 1st. Were the defendants liable at all for the alleged injury? 2d. And if liable, can the plaintiff maintain the action?
1st. The complaint alleges that the defendants, by their officers, agents and servants, undertook to enlarge and widen the cut in the Albany pier on the south side thereof, and so carelessly *Page 338 
and negligently performed the work that, by and through such carelessness and negligence, the north wall of a building or warehouse of the plaintiff's on such pier was thrown down, and the building greatly injured and damaged, and the plaintiffs deprived of the use, occupation and income thereof. The fact of the defendants proceeding to enlarge and widen the cut is not denied in the answer, but they set up by way of avoidance that the work was not done under their immediate care, but by a contractor, under a special agreement that it should be done at a proper time and in a skillful manner; none of which facts were attempted to be proved on the trial. The proof showed that the work was done by the defendants' engineers and employees, under their direction, and not by a contractor under any special agreement.
The defendants having obtained the consent of the pier company to widen the cut by excavating their own lots, might lawfully perform the work, and so long as the excavation did not extend beyond their own land, and was not negligently or unskillfully done, any injury to an adjacent proprietor would be damnumabsque injuria. But if the work was negligently, unskillfully and improperly performed, and in consequence thereof the building of the plaintiffs was injured, they would be liable. (Dodd v.Holmes, 1 Adol. Ellis, 473; Jones v. Bird, 5 Barn. 
Ald., 837; Vaughan v. Mealon, 32 Eng. Com. Law, 613;Slingsly v. Barnard, 1 Roll., 430; Bellows v. Sacket, 15 Barb., 96.) The judge charged the jury that if the work of excavation was negligently conducted by the defendants, then they were liable for the injury, thus carrying out the principle enunciated, and which runs through the cases.
The question of negligence, or whether the excavation was made with ordinary care and skill, was submitted to the jury, the judge not being requested by the defendants to pass upon the question as matter of law from the evidence adduced by the plaintiff. It is true, that one of the grounds urged for nonsuiting the plaintiff was, that there was no proof to authorize a finding that the work on defendants' premises was done in a negligent or improper manner in respect to which an *Page 339 
adjoining owner had any right to complain. But this did not meet the precise question whether there had been a want of ordinary care in the manner of performing the work, whereby injury had resulted to the owner of adjoining premises. But I think that the judge would have been justified in holding, as matter of law upon the evidence, that ordinary care was not exercised, and because it was not, injury resulted to the plaintiff's building; and if so, the defendants cannot complain that the question was given to the jury.
It is a general principle that, if the plaintiff's wrongful act or negligence concurs with that of the defendant in producing the injury, the law will not aid him in obtaining any redress. The principle admits of exceptions and qualifications, which it is unnecessary to state, as I do not think it reaches this case. No negligent conduct of the plaintiffs contributed to produce the injury. The aggressor, says the learned judge, in Bellows v.Sacket (15 Barb., 96,) can never say that it was the duty of the assailed to ward off the blow aimed at him. The plaintiffs were the lessees of the pier lot adjoining those excavated and removed by the defendants, and had erected a building thereon. Through the negligence and want of care of the defendants in excavating their lots and widening the cut, the walls of their building cracked and fell. The defendants, in the fall of 1851, excavated and removed the earth from both of these lots, to within four feet of the north line of the plaintiff's building, and drove piles in such a way as to crack the walls. The work was then suspended until the following spring, during which suspension the water by its action was washing away the earth at the north end of the plaintiff's lot, and gradually undermining such lot. The attention of those engaged in the excavation was called to the action of the water, but nothing was done. There was no duty resting on the plaintiffs to protect their building. But if there had been, nothing could have been done short of erecting the end wall on the south side of the cut. The building could not have been propped up and saved from falling, when the fall was the result of its being partially undermined. It was not the *Page 340 
case of a party who, having a duty to perform, neglects it, and "lies in wait" for damages.
I am clearly of the opinion that the defendants were liable for the injury. They undertook to excavate and remove their lots on the pier with the view of widening the cut on the south side. Whilst they kept upon their own premises, they were bound to ordinary care and skill in doing the work. If they negligently and improperly prosecuted and performed the work, and through such negligence and want of caution the plaintiff's building was injured, they are liable to make compensation. The evidence tended strongly to show, and the jury have found on the question of negligence against the defendants.
2. Are the plaintiffs entitled to maintain the action? It was alleged in the complaint, and admitted by the answer, that the plaintiffs were the lessees of the pier lots, and had erected thereon buildings or warehouses for their own use, and to rent to others. They had, therefore, erected and owned the building injured. They were, by the negligence of the defendants, deprived of its use, and subjected to the expense of rebuilding, to make their enjoyment of the premises as valuable as before. The loss caused by the act of the defendants was suffered by the plaintiffs; and, it being the loss of the latter, I cannot well see why the defendants are not liable to them. But, if it were necessary to enable the plaintiffs to maintain the action, that they should have held an interest in the premises at the time of the injury, such interest appeared. They were lessees of the land on which the warehouse was erected for an unexpired term of years. The injury occurred in 1852; and their lease did not expire until 1858. The destruction of the warehouse, by tortious negligence, was waste, for which the plaintiffs, being tenants for a term of years, were answerable to the reversioner, wholly irrespective of any express agreement to repair or rebuild. Being bound to answer to the heirs of Bloodgood for the injury to the building, they were entitled to a corresponding redress from the defendants. "It is common learning," said HEATH, J., inAttersol v. Stevens *Page 341 
(1 Taunt., 198), "that every lessee of land, whether for life or years, is liable, in an action of waste, to his lessor, for all waste done on the land in lease, by whomsoever it may be committed." "Tenant by the curtesy," says Lord Coke, "tenant in dower, tenant for life, years, c., shall answer for the waste done by a stranger, and shall take their remedy over." (1 Inst., 54, a; 2 id., 145, 303.) In Cook v. The ChamplainTransportation Company (1 Denio, 91), which was an action on the case, by the assignees of an unexpired lease for a term of years, for negligently destroying a mill erected by the plaintiffs on the premises, it was held that the destruction of such building, by means of the negligent acts of a third party, was waste, for which the tenant was responsible to the lessor, and that the lessee or his assignee was entitled to recover the whole value of such building, in an action against the party guilty of the negligence. In the present case, it appeared on the trial that the building at the time it fell was actually occupied by a third party, under the plaintiffs; but no certain term of letting was either alleged or proved. This raised no presumption against the plaintiffs' right to the reversion of the unexpired term. On the contrary, the presumption is, if any, that there was only, at most, a tenancy for the year.
A remaining question arises, on an exception to the charge of the judge, in respect to the damages. The judge charged that if the plaintiffs were entitled to recover at all, they were entitled to recover the amount of damages they had actually sustained, including loss of rent from the Syracuse and Oswego line. It is not seriously questioned that the plaintiffs were entitled to recover, as damages, the cost of repairing and putting the building in as good condition as it was before the injury. The defendants recognized their obligation to pay the plaintiffs for their repairs; and the plaintiffs acted on this recognition in making them. It was not in the nature of a contract between the parties, but of an admission, by the defendants, of the extent of the damage to the building, and of their liability for the injury. But if there had been no recognition, by the defendants, of their obligation to pay for the *Page 342 
repairs, the plaintiffs would have been entitled to recover from them the cost of putting the building in as good condition as it was before it was injured by their negligent acts. These were damages that the plaintiffs had actually sustained. But was loss of rent suffered by the plaintiffs in consequence of the injury a proper item of damages? It can scarcely admit of a question that, had the plaintiffs themselves been using and occupying the premises at the time of the injury, the loss of such occupation and use would have been a proper subject of damage. It is said, however, that as there was no special agreement to put or keep the building in repair, the Syracuse and Oswego line were bound to pay the rent, even though the premises were untenantable or destroyed; and that an abatement of rent, voluntarily made to them, was not a legal element of damage. The charge of the judge was, not that the plaintiffs were entitled to recover, as damages, any sum of rent voluntarily abated to the Syracuse and Oswego line, but damages actually sustained, including loss of rent from such association, in consequence of their being disturbed in the occupation, and deprived of the use of the premises. If the association was not bound to pay rent, while deprived of the use, it was a loss necessarily suffered by the plaintiffs, in consequence of the injury. The building was a temporary structure, erected by the plaintiffs for their own use and accommodation, and to rent, under a ten years' lease. If the association to which they hired it was not bound to pay rent, whilst not enjoying it, — and I think it was not, under the proof in the case, — or if such association could look to the plaintiffs for redress for their loss of occupation, the latter were the parties damnified. There was proof, on the trial, that the building injured was untenantable for half the season, and that the plaintiffs allowed to the Syracuse and Oswego line a deduction on their rent of $150. It may be, that the jury understood from the charge of the judge that they might measure the damages accruing from a loss of rent by the amount so allowed. But this was not the idea suggested in that portion of the charge singled out for exception. The idea was that the plaintiffs *Page 343 
were entitled to recover, as an item of damage, the loss of rent from the Syracuse and Oswego line, occasioned by the latter being deprived of the occupancy and use of the premises for half the season, by reason of the injury. It is manifest, however, that if the jury were misled in the respect intimated, no injustice was thereby done to the defendants. If the Syracuse and Oswego line were not bound to pay rent, whilst the premises were incapable of occupation and use (and this was for half the season), the sum of rent lost by the plaintiffs, by reason of the injury, was greater than that allowed.
It is not, however, clear, that if the charge is to be construed as an instruction to the jury to measure the plaintiffs' damages for loss of rent by the amount deducted, it was such an error as should necessarily lead to a reversal of the judgment. Even though the occupants, but for the deduction, might have maintained an action against the defendants for this portion of the damages, they had the right to look to the plaintiffs for redress for their loss of occupation; and having done so, the plaintiffs are the parties damnified, and, as the only real parties in interest, it seems to me are entitled to maintain the action.
The judgment of the Supreme Court should be affirmed.