Wright, J.
The motion for a nonsuit on the plaintiff’s evidence, and the exceptions to the charge of the court, raise the questions: 1st. Were the defendants liable at all for the alleged injury? 2d. And if liable, can the plaintiff maintain the action ?
1st. The complaint alleges that the defendants, by their officers, agents and servants, undertook to enlarge and widen the cut in the Albany pier on the south side thereof, and so care *338 lessly and negligently performed the work that, by and through such carelessness and negligence, the north wall of a building or warehouse of the plaintiff’s on such pier was thrown down, and the building greatly injured and damaged, and the plaintiffs deprived of the use, occupation and income thereof. The fact of the defendants proceeding to enlarge and widen the cut is not denied in the answer,'but they set up by way of avoidance that the work was not done under their immediate care, but by a contractor, under a special agreement that it should be done at a proper time and in a skillful manner; none of which facts were attempted to be proved on the trial. The proof showed that the work was done by the defendants’ engineers and employees, under- their direction, and not by á contractor under any special agreement.
The defendants hawing obtained the.consent of the pier company to widen the cutbv^cavatmg their own lots, might lawfully perform the work, and so long as the excavation did not extend beyond their own land, and was not negligently or unskillfully done, any injury to an adjacent proprietor would be damnum absque injuria. But if the work was negligently, unskillfully and improperly performed, and in consequence thereof the building of the plaintiffs was injured, they would be liable. (Dodd v. Holmes, 1 Adol. & Ellis, 473 ; Jones v. Bird, 5 Barn. & Ald., 837; Vaughan v. Mealon, 32 Eng. Com. Law, 613; Slingsly v. Barnard,, 1 Roll., 430; Bellows v. Sacket, 15 Barb., 96.) The judge charged the jury that if the work of excavation was negligently conducted by the defendants, then they were liable for the injury, thus carrying out the principle enunciated,'and which runs through the cases.
The question of negligence, or whether the excavation was made with ordinary care and skill, was submitted to the jury, the judge not being requested by the defendants to pass upon the question as matter of law from the evidence adduced by the plaintiff. It is true, that one of the grounds urged for nonsuiting the plaintiff was, that there was no proof to authorize a finding that the work on defendants’ premises was done in a negligent or improper manner in respect to which an *339 adjoining owner had any right to complain. But this did not meet the precise question whether there had been a want of ordinary care in the manner of performing the work, whereby injury, had resulted to the owner of adjoining premises. But I think that the judge would have been justified in holding, as matter of law upon the evidence, that ordinary care was not. exercised, and because it was not, injury resulted to the plaintiff’s building; and if so, the defendants cannot complain that the question was given to the jury. .
It is a general principle that, if the plaintiff’s wrongful act y or negligence concurs with that of the defendant in producing \ "the injury, the law will not aid him in obtaining any redress. J The principle admits of exceptions and qualifications, which is unnecessary to state, as I do not think it reaches this cas&y ¡NjHtegligent conduct of the plaintiffs contributed to produce the injury. The aggressor, says the learned judge, in Bellows v. Sacket (15 Barb., 96,) can never say that it was the duty of the assailed to ward off the blow aimed at him. ' The plaintiffs were the lessees of the pier lot adjoining those excavated and removed by the defendants, and had erected a building thereon. Through the negligence and want of care of the defendants in excavating their lots and widening the cut, the walls of their building cracked and fell. The defendants, in the fall of 1851, excavated and removed the earth from both of these lots, .to within four feet of the north line of the plaintiff’s building, and drove piles in such a-way as to crack the walls. The work was then suspended" until the following '>> spring, during which suspension the water by its action was washing away the earth at the north end of the plaintiff’s lot, and gradually undermining such lot. The attention of those ) engaged in the excavation was called to the action of the water, but nothing was done. There was no duty resting on the plaintiffs to protect their building. But if there had been, nothing could have been done short of- erecting the end wall on the south side of the cut. The building could not have been propped up and saved from falling, when the fall was the result of its being partially undermined. It was not the *340 case of a party who, having a duty to perform, neglects it, and “ lies in wait ” for damages.
I am clearly of the opinion that the defendants were liable tor the injury. They undertook to excavate and remove their lots on the pier with the view of widening the cut on the south side. Whilst they kept upon their own premises, they were bound to ordinary care and skill in doing the work. If they negligently and improperly prosecuted and performed the work, and through such negligence and want of caution the plaintiff’s building was injured, they are liable to make compensation. The evidence tended strongly to show, and the jury have found on the question of negligence against the' defendants.
2. Are the plaintiffs entitled to maintain the action? It was alleged in the complaint, and admitted by the answer, that the plaintiffs were the lessees of the pier lots, and had erected thereon buildings or warehouses for their own use, and to rent to others. They had, therefore, erected and owned the building injured. They were, by the negligence of the defendants, deprived of its use, and subjected to the expense of rebuilding, .to make their enjoyment of the premises as valuable as before. The loss caused by the act of the defendants was suffered by the plaintiffs; and, it being the loss of the latter, I cannot -well see why the defendants are not liable to them. But, if it were necessary to enable the plaintiffs to maintain the action, that they should have held an interest in the premises at the time of the injury, such interest appeared. They were lessees of the land on which the warehouse was erected for an unexpired term of years. The injury occurred in 1852; and their lease did not expire until 1858. The destruction of the warehouse, by tortious negligence, was waste, for which the plaintiffs, being tenants for a term of years, were answerable to the reversioner, wholly irrespective of any express agreement to repair or rebuild. Being bound to answer to the heirs of Bloodgood for the injury to the building, they were entitled to a corresponding redress from the defendants. “It is common learning,” said Heath, J., in Attersol v. Ste *341 vens (1 Taunt., 198), “ that every lessee of land, whether for life or years, is liable, in an action of waste, to his lessor, for all waste done on the land in lease, by whomsoever it may be committed.” “ Tenant by the curtesy,” says Lord Coke, “ tenant in dower, tenant for life, years, &c., shall answer for the waste done by a stranger, and shall take their remedy over.” (1 Inst., 54, a; 2 id., 145, 303.) In Cook v. The Champlain Transportation Company (1 Denio, 91), which was an action on the cáse, by the assignees of an unexpired lease for a term of years, for negligently destroying a mill erected by the plain tiffs on the premises, it was held that the destruction of such building, by means of the negligent acts of a third party, was waste, for which the tenant was responsible to the lessor, and that the lessee or his assignee was entitled to recover the whole value of such building, in an action against the party guilty of the negligence. In the'present case, it appeared on the trial that the building at the time it fell was actually occupied by a third party, under the plaintiffs; but no certain term of letting was either alleged or proved. This raised no presumption against the plaintiffs’ right to the reversion of. the unexpired term. On the contrary, the presumption is, if any, that there was only, at most, a tenancy for the year.
A remaining question arises, on an exception to the charge of the judge, in respect to the damages. The judge charged that if the plaintiffs were entitled to recover at all, they were entitled to recover the amount of damages they had actually sustained, including loss of rent from the Syracuse and Oswego line. It is nofseriously questioned that the plaintiffs were entitled to recover, as damages, the cost of repairing and putting the building in as good condition as it was before the injury. The defendants recognized their obligation to pay the- plaintiffs for their repairs;- and the plaintiffs acted on this recognition in making them. It was not in the nature of a contract between the parties, but of an admission, by the defendants, of the extent of the damage to the building, and of their liability for the inj ury. But if there had been no recognition, by the defendants, of their obligation to pay for the *342 repairs, the plaintiffs would have been entitled to recover from them the cost of putting the building in as good condition as it was before it was injured by their negligent acts. These were damages that the plaintiffs had actually sustained. But was loss of rent suffered by the plaintiffs in consequence of the injury a proper item of damages? It can scarcely admit of a question that, had the plaintiffs themselves been using and occupying the premises at the time of the injury, the loss of such occupation and use would have been a proper subject of damage. It is said, however, that as there was no special agreement to put or keep the building in repair, the Syracuse and Oswego line were bound to pay the rent, even though the premises were untenantable or destroyed; and that an abatement of rent, voluntarily made to them, was not a legal element of damage. The charge of the judge was, not that the plaintiffs were entitled to recover, as damages, any sum of rent voluntarily abated to the Syracuse and Oswego line, but damages actually sustained, including loss of rent from such association, in consequence of their being disturbed in the occupation, and deprived of the use of the premises. If the association was not bound to pay rent, while deprived of the use, it was a loss necessarily suffered by the plaintiffs, in consequence of the injury. The building was a temporary structure, erected by the plaintiffs for their own use an¡i accommodation, and to rent, under a ten years’ lease. If the association to which they hired it was not bound to pay rent, whilst not enjoying it,— and I think it was not, under the proof in the case,—■ or if such association could look to the plaintiffs for redress for their loss of occupation, the latter were the parties damnified. There was proof, on the trial, that the building injured was untenantable for half the season, and that the plaintiffs allowed to the’ Syracuse and Oswego line a deduction on their rent of $150. It may be, that the jury understood from the charge of the judge that they might measure the damages accruing from a loss of rent by the amount so allowed. But this was not the idea suggested in that portion of the charge singled out for exception. The idea was that the plaintiffs *343 were entitled to recover, as an item of damage, the loss of rent from the Syracuse and Oswego line, occasioned by the latter being deprived of the occupancy and use of the premises for half the season, by reason of the injury. It is manifest, however, that if the jury were misled in the respect intimated, no inj ustice was thereby done to the defendants. If the Syracuse and Oswego line were not bound to pay rent, whilst the premises were incapable of occupation and use (and this was for half the season), the sum of rent lost by the plaintiffs, by reason of the injury, was greater than that allowed.
It is not, however, clear, that if the charge is to be construed as an instruction to the jury to measure the plaintiffs’ damages for loss of rent by the amount deducted, it was such an error as should necessarily lead to a reversal of the judgment. Even though the occupants, but for the deduction, might have maintained an action against the defendants for this portion of the damages, they had the right to look to the plaintiffs for redress for their loss of occupation; and having done so, the plaintiffs are the parties damnified, and, as the only real parties in interest, it seems to me are entitled to maintain the action.
The judgment of the Supreme Court should be affirmed.
Allen, J.
It was alleged in the complaint and admitted by the answer, that the plaintiffs had been, from the 1st of June, 1850, a time long -anterior to the injury complained of, and still were, “ lessees of certain lots and premises on the pier in front of the city of Albany, and had erected thereon certain buildings or warehouses for the use of themselves, their customers, and to rent to others. The damages claimed and recovered were for injuries to Their buildings. The defendants merely denied by their answer that the plaintiffs occupied the premises, a fact not alleged in the complaint or necessary to the action. Actual occupation was not necessary. The interest in the term, and the right of. possession thus admitted, gave the right of action for the injury complained of But it came out upon the trial, upon the cross-examination of *344 one of the plaintiffs’ witnesses, that the building which was destroyed was, at the time it fell, in the actual occupation of the Syracuse and Oswego line, who had hired it of the plaintiffs in the winter of 1852, the excavation by the defendants having been commenced in October or November preceding. The possession of the actual occupants was under a lease from the plaintiffs, but the terms or duration of the lease did not appear. It will not be assumed, in the absence of any averment or proof to that effect, that the plaintiffs had parted with all their interest in the term or the premises. The occupants were sub-lessees of a portion of the premises under the plaintiffs, having a term less than that of the plaintiffs, leaving the plaintiffs a reversionary interest in their unexpired term. If they owned the buildings, with the right of removal at the expiration of their term, the destruction of them was a direct f injury, for which an action lay for the present value of the property destroyed. If they had not the right to remove them, then they had become a part of the freehold and the reversionary interest of the landlord, and the plaintiffs were responsible to the landlord for their destrnction by the tortious negligence of the defendants. It was waste, for which the tenants were responsible, and, being bound to answer to the landlord for the., full value of the building, they were entitled to recover the same amount from the wrongdoer. (Cook v. Champlain Trans. Co., 1 Denio, 91.) If they were the owners of the building, they would necessarily be entitled to recover its full value: within the principle of the case cited, a like result would follow if the building, by annexation, had become the property of the landlord. Again, as tenants, they had an interest in the building as a source of profit in itself and as necessary to the profitable occupation of the demised premises, which gave them a right of action for its destruction. The measure of damages depended upon the value of the interest 'destroyed, or, in other words, the actual pecuniary loss to the plaintiffs, as tenants, for the unexpired term. The defendants contend that because their wrongful act may have damnified the inheritance, giving an action to the reversioner, the tenant could have no action for the *345 injury to him. But each may have a remedy for the damages sustained in respect to his particular estate. If the same act deprives the tenant of the temporary enjoyment of his term, and also injures the inheritance, the injury to the tenant is not merged in that done to the owner of the larger and reversionary estate. Whether the measure of the plaintiffs’ damages should be the value of the building, the cost of its repair or the value of its use during the residue of the term, or what should be the true measure of damages, was not made a question upon the trial. It was assumed by the defendants, by not excepting to the rule of damages suggested by the court or suggesting any other, that the right of the plaintiffs to recover any amount being established, the principle upon which the damages in respect to the building should be assessed was correct as laid down by the court.
In other words, the only objections touching this branch of the case were to the right of recovery, and not to the amount or the items. The right upon the facts is undoubted. This is not an action of trespass, which is a possessory action, in which the plaintiff must either have the actual possession or the title, with the right of immediate possession, but is an action on the case for the recovery of damages, as well consequential as direct, to the possession as well as the estate or other interest of the party.
I have thus far considered the objections to the title of the plaintiffs. The only other exception is to the cause of action as alleged and proved. The principle so ably discussed in Farrand v. Marshall (21 Barb., 409), is not involved in this action, and, important and interesting as it is, cannot be decided by this court. The complaint is for so carelessly and negligently enlarging and widening a certain cut or opening in the pier, that, by and through the carelessness and negligence of the defendants, the buildings of the plaintiffs were thrown down and destroyed. Evidence was given tending to show that, with proper and sufficient dispatch and care, the work could have been done so as not to have injured the plaintiffs’ building, and that with proper precautions no injury *346 would have been occasioned; and the defendants’ liability was made by the judge, in submitting the cause to the jury, to rest upon the fact of their negligence in making the excavation. It was no where suggested in the pleadings or upon the trial, that the land and buildings of the.plaintiffs had fallen, by reason of the excavation having been so near the dividing line between the plaintiffs’ and defendants’ land, as to take from the former its natural support so that it could not stand by its own cohesion, by reason whereof the defendants had become liable to respond in damages. On the contrary, the right to make the excavations in a proper and careful manner was conceded, and it was submitted to the jury whether the work of excavation had been negligently conducted by the defendants, and they were told that if it had been so conducted the defendants were liable for the injury. Whatever were the rights of the defendants in the occupation and improvement of their own premises, they were held to ordinary care and diligence in such occupation and improvement. A party is not excused from the. consequences of his own negligence by the fact that the negligence occurs upon his own premises, and in the performance of an act lawful in itself. A lawful act may_ not be performed in a careless and negligent manner.to the injury of a third person with impunity. If the hayrick of A on his own premises ignites from his negligence, whereby the property of B is burnt, A is liable to an action on the case. (Vaughan v. Menlove, 7 C. & P., 525.) So if A set fire to his own fallow ground, as he may lawfully do, and the fire spread to the woodland of his neighbor, no action lies against A, unless there was some negligence or misconduct of himself or his servants, and in such case the action lies. (Clarke v. Foot, 8 John., 421; Bush v. Brainerd, 1 Cow., 78; Baily v. Mayor of New York, 3 Hill, 531, affirmed 2 Denio, 433; Gardner . v. Heartt, 1 Denio, 466 S. C., 2 Barb., 165.) Dodd v. Holmes (1 A. & E., 493), decides this case in principle and upon the ground upon which it was put at the circuit. It was there held that when it was alleged and proved that the defendant so negligently, unskillfully and improperly dug his own soil that *347 the plaintiff’s house was thereby injured, an action lies. All the judges agreed that it was properly put to the jury to say whether the allegations of negligence were proved, and they having found in the affirmative, the cause of action was established. There being some evidence of negligence, the judge at circuit properly refused to decide it as a question of law, and submitted it to the jury. (Foot v. Wiswall, 14 John., 304.)
There was no evidence of the plaintiffs’ negligence, or that their want of proper care contributed to the injury. They had no right to go upon the defendants’ premises to build a wall, drive piles and complete the excavations, or to shore up their own building; and it did not appear that they could have prevented the injury by any act which they could have done upon their own premises or lawfully upon the defendants’ land. Most Certainly there was no evidence of negligence on the part of the plaintiffs so clear and conclusive as to authorize the judge to rule as matter of law that the plaintiffs were, by reason of it, barred of their action. There was no exception to the charge of the judge upon that point, nor any request to submit the question to the. jury. It must be assumed, therefore, that there was no error in the submission of the cause to the jury upon any question connected with the plaintiffs’ acts or omissions, and that the well-established rules of law, as contended for by the defendants, were declared by the judge in his charge to the jury.
There was no error of law upon the trial, and the judgment of the court below must be affirmed.
Selden and Smith, Js., expressed no opinion.
Judgment affirmed