ELI WHITE, RESPONDENT, *v.* MERRICK SHELDON, APPELLANT.

35 193
39ap166
35h 193
53ad557

*Easement — an owner may use his land as he pleases, although he thereby obstructs the flow thereon of the surface water from an adjoining lot — no rights are acquired by lapse of time under a user by permission of the owner of the servient estate.*

Water issuing from springs at the base of a range of hills flowed sluggishly and without any determinate channel or bed over the lands of the plaintiff, then over the adjoining lands of the defendant, and thence over the lands of an adjoining owner to a natural creek. Originally the water spread over a considerable portion of the defendant's lot, which was known as the swamp lot. About forty years before the trial the defendant dug a ditch across his land, running from the plaintiff's line to the line of the owner adjoining on the other side. Thereafter the latter owner extended this ditch across his land to the stream, and the plaintiff extended it across his land to the sources of the springs. As the ditches became filled up by the cultivation of the farms they were from time to time reopened.

After the defendant had acquired title to his farm he cultivated it without regard to the ditch, plowing across and thereby obstructing and filling it up. He also obstructed the flow of the water from the end of the plaintiff's ditch, which ditch the plaintiff had recently widened and deepened so that it discharged more water than formerly.

In an action by the plaintiff to recover the damages occasioned by these acts of the

defendant the court charged that the plaintiff had a right to have the water flow over the land of the defendant, as it had flowed for the last twenty years, and that the defendant was guilty of a trespass if he in any way interfered with such flow of the waters.

*Held,* error.

That the character of the user and the circumstances attending it were such as to show that it was a mere privilege enjoyed by the leave of the owner of the servient tenement and not adverse in its nature; and that this being so no lapse of time would prevent the owner of the servient estate from using and cultivating his land as he should prefer, although the natural flow of the surface water from the plaintiff's land might be thereby obstructed.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict at the Livingston Circuit, and from an order of the Special Term, denying a motion for a new trial.

The parties are owners of adjoining farms in Livingston county. South-west of the plaintiff's premises several springs issue from the base of some hills and the water therefrom settles into swamps, and in a sluggish manner spreads out into wet places or swales and works its way in a north-easterly direction through a culvert under what was the Genesee Valley canal, constructed by the State in the year 1838, and from thence through and over a depression in the surface of plaintiff's farm and on to defendant's land, formerly spreading over a considerable portion of defendant's land so that his was known as the " swamp lot." There are no springs upon the lands of the parties. The owner of defendant's farm, some forty years before the trial, dug a ditch across his farm, extending from the line between his and plaintiff's land, in a north-easterly direction towards Samp's creek. The owners of the lands between defendant's premises and Samp's creek extended this ditch to such creek, and shortly thereafter the owners of plaintiff's farm dug a ditch from the culvert under the canal across and through the lowland on their farm, connecting it with defendant's ditch. These ditches were constructed to expedite the flow of water across these lands. Though not constructed at the same time, the action of each proprietor was taken because of the action of the previous mover in the enterprise. The ditches were so constructed that at first they did not drain the surface water from the adjoining lands of the farms, excepting such as might percolate through the banks of the ditch.

By the cultivation of the farms and other causes, the ditches filled up and were from time to time again opened. By cultivating his land and from natural causes at the time of the commission of the acts complained of, the ditch on defendant's land had become, in places, substantially obliterated, the land occupied by the ditch being cultivated by defendant in the same manner as he cultivated the balance of his farm. The plaintiff, just prior to the commission by defendant of the acts complained of, deepened and widened the ditch on his farm the whole length thereof, making it about three feet deep and four feet in width. By means thereof the flow of water was expedited, thereby discharging it in larger quantities upon defendant's premises than would otherwise have been the case.

Defendant purchased his farm in 1872. It was occupied by a tenant until 1876. He then went into occupation personally, remaining in possession until the commission of the acts complained of. In the cultivation of his land, defendant ploughed through and over the ditch, leveling its banks so that the surface water on either side thereof could flow without obstruction into it.

The evidence tends to show that in so doing the ditch was more or less filled up, this being one of the acts of defendant, complained of by the plaintiff. The evidence also tended to show that after the opening by plaintiff of his ditch, as above stated, the defendant put obstructions therein upon his premises, building a small sod dam near the line of plaintiff's land, thereby causing the water to set back in the ditch on plaintiff's land, and that he also entered upon plaintiff's land and made openings in the bank of plaintiff's ditch, thereby causing water which had accumulated therein to be discharged upon plaintiff's premises, to his damage. These facts were all controverted upon the trial by defendant.

*W. A. Sullivan,* for the appellant.

*A. J. Abbott,* for the respondent.

LEWIS, J.:

The learned judge at circuit charged the jury that under the circumstances of the case the plaintiff, when he came upon the premises, had a right thenceforward to an enjoyment of such an easement in the lands of the defendant, for the flow of his water across the lands of the defendant, as these lands had enjoyed for

twenty years previous to that time, whether it was a natural or an artificial stream. That if there had been a ditch or channel across the defendant's land through which these waters had been accustomed to flow for twenty years, before the time when the alleged trespass of the defendant was committed, the defendant was guilty of a trespass if he in any manner interfered with such flow of such waters so as to set them back upon the premises of plaintiff. That each of these parcels of land, if this right to discharge water had been maintained for twenty years, acquired such a right as to the lands below. That if that right had continued for twenty years up to the time these questions arose, the plaintiff had the right to have it continue as it had continued during the twenty years. That the twenty years establishes the right to the continuance of the existing state of things. That it was the duty of the defendant, if the right had continued for twenty years, to maintain this ditch upon his premises in such condition that the flow of water over them might be the same as it had been during the twenty years. He had no right by raising the bottom of his ditch or by putting obstructions in it — certainly much less by going upon the plaintiff's premises and putting obstructions in it — to obstruct the flow of the water. That whatever have been the acts of the defendant upon his own land, or upon the lands of the plaintiff, which have interfered with the flow of the water as the plaintiff had the right to have it flow, was a trespass upon the plaintiff and entitles him to recover such damages as he has shown that he has sustained by reason of such acts.

The defendant excepted to the charge " that the plaintiff had the right to enjoy such an easement as had been enjoyed for twenty years." He also excepted to the charge that if the defendant interfered with the flow of waters as they had flowed for twenty years, he was liable. The jury was, in effect, instructed if water had continued to flow across defendant's land, through the ditch for twenty years prior to the commission of the acts complained of, the defendant was liable if he caused the ditch by any means to be filled or the bottom of it to be raised so as to set back the water upon plaintiff's land, even if the interference with the ditch was the result of cultivating defendant's farm as farms are usually cultivated. These ditches were constructed and maintained by the owners of

these lands for their mutual convenience. At times they were allowed to be filled up and remain in that condition for a time; were again cleaned out at the pleasure of the several proprietors, not being kept in the same condition for any great length of time.

There is nothing in the case showing that the occupants of plaintiff's farm, until this contention arose, made any claim of right to use the defendant's ditch for the passage of water accumulating on plaintiff's farm, at most it was a user by implied license.

The charge of the court was that twenty years' enjoyment gave the owner of plaintiff's premises a prescriptive right to the easement on defendant's land. The draining of plaintiff's land through defendant's ditch being by the license and permission of the owner thereof, plaintiff's use and enjoyment was not adverse and did not ripen into a right by prescription. (*Wiseman* v. *Lucksinger*, 84 N. Y., 44; *Smith* v. *Miller*, 11 Gray, 148; *Nichols* v. *Wentworth*, 16 N. Y. Weekly Dig., 353.)

In case the user is of such a character and the circumstances attending it are such as to show that it was a mere privilege enjoyed by leave of the proprietor of the servient tenement, it is not adverse. (*Trask* v. *Ford*, 39 Maine, 437; Angell on Water Courses, § 210.)

In *White* v. *Chapin* (12 Allen, 516, 518) the court say, in regard to the flow of surface water from upper upon lower land over the natural surface of the earth: " The law is clearly settled that no length of time creates any easement by which the owner of the lower land is prevented from using his own land as he will, although the natural flow may be stopped thereby and set back upon the upper estate." (Angell on Water Courses, § 108 *a*; *Kauffman* v. *Griesemer*, 26 Penn. St., 407.) The evidence failed to establish the existence of a natural water-course. The judge so charged the jury. Until the digging of the ditches by the parties the surface waters formed a swale, without any defined bed or established banks.

The plaintiff must maintain, under the charge of the court, in order to sustain this judgment, that he had a right to the flow of the water through the ditch or channel across defendant's land, and that defendant was guilty of trespass if he in any manner interfered with such flow of such waters, so as to set them back upon plaintiff's premises, and that he had the right for all time to an enjoyment of such an easement in the lands of the defendant, as plaintiff's lands

had enjoyed for twenty years previous to that time, without change or diminution. If plaintiff's land has this right, then defendant is prevented from cultivating his farm in the ordinary manner farms are cultivated, if, by so doing, he shall interfere in any respect with the flow of such waters, or change the manner of discharging them. No person has the right to relieve his own land from standing water, or prevent its accumulation thereon by discharging it through the ditches or drains upon the lands of his neighbor. (*Foot* v. *Bronson*, 4 Lans., 51; *Bellows* v. *Sackett*, 15 Barb., 96; *Barkley* v. *Wilcox*, 86 N. Y., 140.)

As the proof tended to show that a portion of the damages sustained by plaintiff was the result of this setting back of water, caused by the partial filling up of the ditch upon defendant's land, by the cultivation thereof by defendant in the manner farms are ordinarily cultivated; and the jury, under the charge of the court, being permitted to take those acts of the defendant into consideration in estimating the damages the plaintiff sustained, we think the jury were misled, and that the plaintiff recovered a larger verdict than he would if the true rule had been stated to them by the court, and for this reason we think the judgment should be set aside, and a new trial granted, costs to abide the event.

BARKER, HAIGHT and BRADLEY, JJ., concurred.

Judgment and order reversed, and a new trial granted, with costs to abide event.