WHITE <i>v.</i> SHELDON.

(<i>Supreme Court, General Term, Fifth Department.</i> December 30, 1889.)

1. SURFACE WATERS—RIGHT TO DRAIN.
   Mere verbal license or tacit consent, by one adjacent proprietor, to the draining of another's land through a ditch constructed by the servient owner, for his own convenience, will not, though continued for more than 20 years, without the assertion of a legal right to do so, give the owner of the dominant estate a prescriptive right to drain his land over the servient tract.

2. SAME—ABATEMENT OF NUISANCE.
   If the dominant owner creates on his own land such obstructions as injuriously increase the flow of water on the servient owner's land, the latter may enter and abate the nuisance, so as to restore the drainage to its natural condition.

Appeal from judgment on report of referee.
Argued before BARKER, P. J., and DWIGHT and MACOMBER, JJ.
*A. J. Abbott,* for appellant.     *W. A. Sutherland,* for respondent.

MACOMBER, J. This action was brought to recover damages for obstructing the drainage of certain waters coming through the plaintiff's premises, and discharged by him upon those of the defendant. The parties hereto are adjacent occupants of land in the town of Leicester, Livingston county, consisting of a tract of 60 acres each. They are agricultural lands, and have been, for 50 years, occupied and cultivated exclusively for agricultural purposes. The prior owner of the defendant's land, about the year 1833, made a ditch across the same, in a northerly and southerly direction, extending from the north line to the south line of such lot. The party below,—that is, north of the defendant's lands,—who is not, nor is his successor, a party to this action, or interested therein, made a similar ditch across his lands, to the north. Soon thereafter, the owner of the lands now in possession of the plaintiff made a ditch across such lands, to the intersection of the north line of the ditch on the defendant's lands. Each person above mentioned so constructed his drainage for his individual use and benefit alone. These several pieces of property have been owned always in severalty, and these several ditches were constructed individually, and without any agreement between the parties for any systematic or common mode of drainage. The use which was made, by the persons in possession of the plaintiff's lands, of the ditch connecting with the defendant's drain for passage of the waters over the defendant's lot, was permitted only by verbal license and permission, or tacit consent, of the owner of the lands now held by the defendant; and such use was had without any pecuniary or other consideration, and was without grant, agreement, or writ-

ing of any description. No claim of legal right was made thereto until the beginning of this action. When the state of New York, in the year 1838, constructed the Genesee Valley Canal, a portion of which passes through the town of Leicester, the state authorities built a culvert at a point of low depression in the surface of the ground, under the canal; and, by means of certain artificial drains or ditches, the waters accumulating upon the westerly side of the canal, arising from certain springs, were conveyed to, and concentrated at, that point, and made to pass through the culvert, in a body, upon the lands now occupied by the plaintiff. Prior to this time the surplus waters flowing from these springs, which were situated upon a range of hills westerly and southwesterly from the plaintiff's lands, were accustomed to flow down upon the lowlands at the base of the hills, and, together with other waters naturally collecting thereon, formed a tract of swampy and marshy land, some portion of which was upon the lands of each of the parties to this action. All waters, up to the time of the construction of the ditch hereinbefore mentioned, passed across the lands, upon the surface, and had no natural channel. The plaintiff, in order to provide for the waters passing through such culvert, enlarged the capacity of his ditch by excavation or by elevations of the banks thereof above the natural surface of the soil, whereby a much larger quantity of water was permitted to pass through the same. At his northerly line the bottom of the ditch was much below the surface of the adjacent land of the defendant, and much of the water contained therein would not pass out in that direction. On several occasions the defendant, finding a small dam erected across the ditch upon the land of the plaintiff at this northerly end, whereby the waters of the ditch were turned and thrown upon a lower portion of the defendant's land, to the great injury thereof, and to the crops growing thereon, placed various obstructions in such new-made channel, for the sole purpose of preventing such diversion and consequent injury. On one occasion, on the 5th day of April, 1880, he entered upon the plaintiff's land, and made an opening on the elevated bank of the ditch, down to the level of the natural adjacent soil, but did no damage to the plaintiff. The defendant, in the ordinary, proper, and profitable management and cultivation of his lands, has improved the same, in and about the locality of this ditch, by leveling down the banks of said ditch, for the purposes of drainage, making a more gradual slope and broader depression by way of the channel; and the same has at all times been maintained of sufficient extent and capacity for the proper convenience of all waters naturally or legitimately coming upon or passing over said premises.

The foregoing is the substance of the evidence adduced. The examination of such evidence fails to disclose that there was at any time any agreement on the part of the defendant, or of his grantors, that the lands now occupied by him should be servient to the lands of the plaintiff, or that he should maintain or keep open a ditch for the accumulation of waters which might be precipitated thereon from above. The case is entirely devoid of any evidence of prescriptive right, save only the fact that the waters coming in a ditch across the plaintiff's lands had been received in a similar ditch on the defendant's lands, and passed on to the proprietor below, for a period of upwards of 20 years. The right so to discharge the waters from the plaintiff's lands upon those of the defendant was never asserted, and never rested in any form of agreement. Unless, therefore, the mere taking of the waters by the defendant and his predecessors for a period of upwards of 20 years works a prescriptive right, the plaintiff has no ground for recovery in this action. When this case was before this court upon a former appeal, (35 Hun, 193,) it was held that the draining of the plaintiff's land to the defendant's ditch being by the mere license and permission of the owner thereof, the plaintiff's use to the enjoyment was not adverse, and did not ripen into a right by prescription. We refer to the opinion in that case for the details of the decision, and deem it not

necessary to cite the authorities for the proposition which were there mentioned. In the absence of an agreement, and in the absence of an assertion of a positive right, no length of time creates any easement by which the owner of the lower-land is prevented from using his lands as he sees fit, although such use as he puts them to does lessen the facilities for the surface drainage of an adjacent owner, so long as the lower proprietor erects no barriers to the free and full flow of the surface waters. Ang. Water-Courses, § 108a; *White* v. *Chapin*, 12 Allen, 516. So long as the waters are mere surface waters, and not confined in any well-defined bed or creek, so as to constitute a water-course, their accumulation cannot be avoided by the upper proprietor, by means of embankments or ditches, by which he is enabled to discharge the same, in unusual quantities, upon his neighbor's lands. *Foot* v. *Bronson*, 4 Lans. 51; *Bellows* v. *Sackett*, 15 Barb. 96; *Barkley* v. *Wilcox*, 86 N. Y. 140. Whatever license the plaintiff and his predecessors had to use the defendant's ditch through the latter's tacit license, it not being founded upon any consideration, and not resting upon the assertion of legal right, was revocable at any time. *Cassidy* v. *Railroad Co.*, 5 N. E. Rep. 142; *Duryee* v. *Mayor, etc.*, 96 N. Y. 477; *Cronkhite* v. *Cronkhite*, 94 N. Y. 323.

The learned counsel for the appellant on this appeal admits, or at least asserts, that the proofs on the last trial before the referee did not materially differ from those taken upon the first trial, so far as the legal questions there presented. Surely, the evidence is not more favorable to the plaintiff than it was upon the last trial. As the case was made up upon the former appeal, there existed some little doubt in the testimony whether the defendant, irrespective of his legal rights in regard to drainage, had not committed a technical trespass upon the plaintiff's lands, in demolishing a structure which the plaintiff himself had erected thereon. The evidence given before the referee, however, shows clearly that the defendant did not demolish any structure which the plaintiff had erected upon his own premises for the discharge of the waters below, except the new embankment, which the plaintiff designed for the purpose of discharging waters, in unusual and extraordinary quantities, upon the defendant's lands, in another place, for the purpose of coercing the defendant into receiving the waters as before, and into passing them on to the next proprietor. Such is the finding of the referee. The defendant had an undoubted right to abate the nuisance thus erected by the plaintiff, so long as he did no damage to the plaintiff's lands. The referee has found, and the finding is well supported by the evidence, that the leveling of the newly enlarged banks of the ditch was only down to the surface where the same formerly existed. Under these circumstances, the plaintiff had no right to complain of the act of the defendant.

It is argued by the counsel for the appellant that the plaintiff's right arises from the fact that the waters in question came upon the defendant's lands, in natural streams, from natural springs, and that consequently the plaintiff has the right to have the water from his ditch flow over the defendant's lands. The evidence, however, does not warrant the conclusion that there ever existed any natural stream arising from the springs which were located at the south-west of the plaintiff's lands, and on the further side of the Genesee Valley Canal. Like all other springs, a slight ditch was undoubtedly made from the spring for a few hundred feet, as is shown by the evidence; but, after the waters had gone a short distance, there was no visible ditch existing, through which they poured, but the same spread over the whole surface of the land. After the state authorities, upon erecting the Genesee Valley Canal, had gathered these waters in a ditch, for the purposes of carrying them under the canal prism, they again found their way over the surface of the ground, and remained surface waters, except in so far as they were collected by the plaintiff, and discharged into the ditch made by the defendant. The judgment should be affirmed. All concur.