## NIAGARA OIL COMPANY *v.* JACKSON ET AL.

[No. 6,623.   Filed May 18, 1910.   Rehearing denied December 30, 1910.   Transfer denied June 28, 1911.]

1. TORTS.—*Use of Property.—Damages.*—The owner of property has a right to use it in a reasonable manner, and if in the use thereof incidental injury is done to another, no recompense can be demanded therefor.   p. 241.

2. NUISANCE.—*Trespass.—Overflowing Mineral Waters.—Damages.* —The operator of a gas well or oil well, who suffers salt water therefrom to overflow his neighbor's land, destroying its fertility and the vegetation thereon, is liable therefor.   p. 241.

3. WATERS.—*Surface.—Artificial Flowage.—Damages.*—The owner of land over which surface-waters naturally flow has no cause of action therefor, but he has a cause of action where the overflowing waters have been artificially collected and discharged upon such land.   p. 242.

4. WATERS.—*Streams.—Pollution.—Cities.*—While lower riparian owners have been held remediless in cases where streams have been polluted by upper proprietors, or cities, the conservation of the public health requires that such holdings should be largely restricted; and cities have no right to cast polluted water on the surface so that it will flow upon a servient owner's land.   p. 242.

5. NUISANCE.—*Contributory Negligence.*—Contributory negligence constitutes no defense to an action for maintaining a nuisance. p. 244.

6. NUISANCE.—*Negligence.—Discharging Collected Waters.—Complaint.*—A complaint alleging that defendant in operating its oil and gas well discharged saline waters upon plaintiff's land, thereby destroying its fertility and vegetation, states a cause of action regardless of any allegations of negligence therein contained.   p. 245.

7. VENUE.—*Change of.—Effect.*—The court to which a cause of action has been transferred by a change of venue has sole jurisdiction thereof and should proceed with the case as though such case had originated in such court.   p. 245.

8. PARTIES.—*Additional, on Change of Venue.*—A plaintiff, after a change of venue from the county has been granted, may amend his complaint by adding new parties, though such parties live in the county from which the case was taken.   p. 246.

9. NUISANCE.—*Continuance of.—Damages.*—A nuisance constitutes a continuing offense and gives rise to damages in plaintiff's favor as long as it continues.   p. 246.

10. NUISANCE.—*Damages.—For What Time Assessed.—Supplemental Complaint.*—Ordinarily damages can be awarded only to

the time of the commencement of an action, but in an action for nuisance a supplemental complaint may be filed for damages accruing after the filing of the complaint, and in that way damages may be recovered up to the time of the trial.    p. 247.

11.  PLEADING.—*Complaint.*—*Supplemental.*—The original and the supplemental complaint constitute the complaint in a cause, the supplemental complaint merely bringing forward the matters accruing after the filing of the original complaint.    p. 247.

From Delaware Circuit Court; *Joseph G. Leffler*, Judge.

Action by Charles Jackson and another against the Niagara Oil Company. From a judgment for plaintiffs, defendant appeals. *Affirmed.*

*Simmons & Dailey, L. B. Simmons* and *F. A. Shaw,* for appellant.

*W. A. Thompson* and *W. H. Thompson,* for appellees.

HADLEY, J.—Appellees were the owners as tenants by the entirety of a tract of land in Randolph county, Indiana. Appellant was the owner of an oil and gas lease on an adjacent tract. Appellee Charles Jackson instituted this action against appellant to recover damages for injuries claimed to have been caused to said real estate by salt water from one of appellant's wells. A change of venue was taken to the Delaware Circuit Court, in which court, on motion of Charles Jackson and on petition by Cora B. Jackson, she was made a party plaintiff.

The amended complaint, upon which the case was tried, avers, in substance, that Orlie Jones owns a tract of land in Randolph county; that appellees' land adjoined the Jones land on the east; that the Jones land was higher, and sloped towards the land of appellees, and the surface-water on the Jones land naturally flowed down upon the land of appellees; that Jones leased his land to appellant for the purpose of producing gas and oil; that appellant put down thereon a great number of wells to a great depth, and pumped, and continues to pump, therefrom large quantities of oil and water strongly impregnated with salt and with noxious and poisonous minerals, which it discharged upon

said land, and pumped great quantities of oil and water, impregnated as aforesaid, into tanks on said land, and carelessly, negligently and wrongfully permitted said water and oil to be discharged from said tanks, and carelessly, negligently and wrongfully permitted said water, so pumped onto said land and discharged from said tanks, to flow down upon appellees' land, and form a pond near appellees' house and home, thereby destroying the vegetation, rendering the land sterile, and the habitation of appellees unhealthful and uncomfortable; that at an inconsiderable cost, appellant could have prevented said water and refuse oil from so flowing upon appellees' land, and could have cared for said water and oil, without injury to appellees or other citizens. To this complaint appellant demurred for want of facts, which demurrer was overruled.

Appellant answered in three paragraphs. The first was a general denial; the second, after admitting the putting down of the wells and the operation thereof, as charged, averred that said wells were drilled to the proper and ordinary depth for the production of oil, in the most skilful way; that said wells were operated and said oil was produced in the most skilful manner; that appellant was never guilty of any negligence in operating said wells, or in producing oil therefrom, or in allowing oil or salt water to escape; that said water, when produced, was allowed by appellant to flow upon the ground, and was allowed to seek its course and escape by its own volition, and that it coursed its way by its own volition, and went upon the lands of appellees, because the land upon which the appellant was operating its said wells was higher than the lands of appellees; that there was no method by which oils could be produced from said wells without the production of salt water, and that said wells could not be operated for oil unless said salt water was allowed to run on the lands of appellees; that any damage thereby caused was absolutely necessary, and could not be

avoided by appellant; that appellant had no intention of injuring appellees.

Appellant insists that the complaint is insufficient, for the reason that what it did was necessary in the exercise of its rights under the lease; that nature had placed the oil there, and there it had to be taken out, and if in so doing appellant incidentally injured another, it was the other's misfortune, for which he was entitled to no recompense. We cannot affirm this doctrine. One is entitled to a reasonable use of his property, even if such use incidentally injures his neighbor; but liability for such injury will attach when the use becomes unreasonable. *Ohio Oil Co.* v. *Westfall* (1909), 43 Ind. App. 661; *Columbus, etc., Iron Co.* v. *Tucker* (1891), 48 Ohio St. 41, 26 N. E. 630, 12 L. R. A. 577, 29 Am. St. 528.

*Sic utere tuo ut alienum non laedas*—''So use thine own that another you may not injure''—is an ancient rule of property, well established in authority and equity; but it has been greatly circumscribed in later years by the influence of selfish greed under the mask of *pro bono publico*. However, we are of the opinion that enough of the rule remains to prevent one from so using his property for his profit as practically to confiscate or destroy his adjoining neighbor's property, where, as here averred, such injury could be prevented at an inconsiderable cost. And if he does so use his property, under such circumstances, and inflicts such injury, he should be compelled to respond in damages, for it can hardly be said that such a use is a reasonable one. *Pfeiffer* v. *Brown* (1895), 165 Pa. St. 267, 30 Atl. 844, 44 Am. St. 660; *Ohio Oil Co.* v. *Westfall, supra;* *Cahill* v. *Eastman* (1872), 18 Minn. 324, 10 Am. Rep. 184; *Fletcher* v. *Rylands* (1866), L. R. 1 Ex. *265.

In the case last cited, which is the leading case on this subject, the rule is laid down as follows: ''We think that the true rule of law is, that the person who for his own

purposes brings on his land and collects and keeps there any-thing likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is *prima facie* answer-able for all the damage which is the natural consequence of its escape. * * * It seems but reasonable and just that the neighbor, who has brought something on his own prop-erty which was not naturally there, harmless to others so long as it is confined to his own property, but which he knows to be mischievous if it gets on his neighbor's, should be obliged to make good the damage which ensues if he does not succeed in confining it to his own property. But for his act in bringing it there no mischief could have accrued, and it seems but just that he should at his peril keep it there so that no mischief may accrue, or answer for the natural and anticipated consequence. And upon au-thority, this we think is established to be the law whether the things so brought be beasts, or water, or filth, or stenches.''

Appellees' land is servient to the surface flowage of the Jones land, which nature casts upon it, contaminated by deleterious matter, with which a reasonable use of the 3. Jones land might impregnate it; but it is not servient to an unreasonable artificial surface flowage, or to surface flowage collected into artificial channels and cast upon it. *Pfeiffer* v. *Brown, supra; Anderson* v. *Drake* (1909), 24 S. Dak. 216, 123 N. W. 673; *Templeton* v. *Vosh-loe* (1880), 72 Ind. 134, 37 Am. Rep. 150; *City of Garrett* v. *Winterich* (1909), 44 Ind. App. 322; *Buchanan's* Trustees v. *Montgomerie* (1853), 2 Stuart 519; *Bellows* v. *Sackett* (1853), 15 Barb. 96; *Smith* v. *Fletcher* (1872), L. R. 7 Ex. 305; *Fletcher* v. *Rylands, supra.*

The principle governing the cases of *Barnard* v. *Sherley* (1893), 135 Ind. 547, 24 L. R. A. 568, 41 Am. St. 454, *Weston Paper Co.* v. *Pope* (1900), 155 Ind. 394, 56 4. L. R. A. 899, and *Pennsylvania Coal Co.* v. *Sanderson* (1886), 113 Pa. St. 126, 6 Atl. 453, 57 Am. Rep. 445,

is not applicable. In each of those cases the injury was caused to riparian owners by the contamination of water in watercourses. Such watercourses are in the nature of natural sewers to carry off accumulated waters and deleterious substances, and riparian owners take their position on the banks of watercourses with notice that such position is superior to those below them and inferior to those above them, that farms, cities and villages may gather along the banks, and that impurities, incident to population, trades and agriculture, that fall upon the surface, will in some way be cast into the stream, and said owners' enjoyment of it thus modified. *City of Valparaiso* v. *Hagen* (1899), 153 Ind. 337, 48 L. R. A. 707, 74 Am. St. 305.

A city may, under certain circumstances, when necessary for the purpose of sanitation, discharge its sewage into a natural watercourse, and thus render its pure waters impure, to the injury of lower riparian owners, without liability for such injury. *City of Richmond* v. *Test* (1897), 18 Ind. App. 482; *City of Valparaiso* v. *Hagen, supra.*

The development of the country and the rapid growth of cities and towns, with their consequent accumulation of filth and sewage, which is being cast into the ponds, streams and watercourses, to the great danger of the public health, has produced a condition that calls for a restriction, if not an abridgment, of the rules laid down in the cases of *City of Richmond* v. *Test, supra,* and *City of Valparaiso* v. *Hagen, supra.* And in this connection attention is called to an act for the protection of streams, enacted by the General Assembly of 1909 (Acts 1909 p. 60). But notwithstanding the various enlargements, in other respects, of the general rule, the law still is, that a city has not the right to collect its surface and subterranean waters into sewers, impregnate them with its filth and sewage, and cast them upon the surface of its land where, by the laws of gravitation, they flow not by watercourses, but upon the surface onto the lower adjoining lands, and render them unfit for cultivation and habitation. *City*

*of Lebanon* v. *Twiford* (1895), 13 Ind. App. 384; *City of Garrett* v. *Winterich, supra; Phinizy* v. *City Council, etc.* (1872), 47 Ga. 260.

For the foregoing reasons, we hold that the averments of the complaint show a liability of appellant to appellees for the injuries charged.

It is also urged that the complaint is insufficient for the reason that it does not aver that appellees were free

5. from contributory fault. The complaint charges the creation and maintenance of a nuisance. §291 Burns 1908, §289 R. S. 1881.

This is an active, aggressive wrong, and contributory negligence does not enter into the question of liability. *City of Lebanon* v. *Twiford, supra; Muncie Pulp Co.* v. *Martin* (1899), 23 Ind. App. 558; *Williamson* v. *Yingling* (1881), 80 Ind. 379; *T. A. Snider Preserve Co.* v. *Beemon* (1901), 22 Ky. Law 1527, 60 S. W. 849; *Paddock* v. *Somes* (1890), 102 Mo. 226, 14 S. W. 746, 10 L. R. A. 254.

In the cases of *T. A. Snider Preserve Co.* v. *Beemon, supra,* and *Paddock* v. *Somes, supra,* the following from Wood, Nuisances (2d ed.) §435, is quoted with approval: "Neither does it make any difference or in any measure operate as an excuse that the nuisance cannot be obviated without great expense, or that the plaintiff himself could obviate the injury at a trifling expense. It is the duty of every person or public body to prevent a nuisance, and the fact that the person injured could, but does not, prevent damages to his property therefrom, is no defense either to an action at law or in equity. A party is not bound to expend a dollar, or do any act to secure for himself the exercise or enjoyment of a legal right of which he is deprived by reason of the wrongful acts of another." The law of contributory negligence has no more place in an action of this sort than has the law of self-defense.

In this case the complaint charges that the positive act of bringing the impregnated subterranean waters in great

quantities to the surface, and discharging them upon the surface where, by the laws of gravitation, they must flow upon appellees' land, and the negligent act, of failing to prevent this natural course of flow, combined, created the nuisance, the maintenance of which constituted a positive wrong for which contributory negligence can have no part in fixing liability. In fact, the averments of negligence on the part of appellant may be considered as surplusage, eliminating all charge of negligence on the part of appellant. The complaint states facts sufficient to constitute a cause of action. *Ohio Oil Co.* v. *Westfall, supra.*

6.

Complaint is made that the court had no jurisdiction of the subject-matter. The land was owned by appellees as tenants by the entirety, and was situated in Randolph county, as was also the land upon which appellant had its lease. Appellee Charles Jackson instituted this suit in Randolph county, afterwards it was venued to Delaware county. Here appellees petitioned the court for leave to amend the complaint, and asked that Cora B. Jackson be made a party. This request was granted, and an amended complaint, in all essential particulars the same as the original complaint, except that Cora B. Jackson was joined with Charles Jackson as plaintiff, was filed, over the objection of appellant. Of course the venue of the action was originally in Randolph county. Appellee Charles Jackson's complaint in the Randolph Circuit Court was sufficient to invoke the jurisdiction of that court over the subject-matter. *Sheridan Gas, etc., Co.* v. *Pearson* (1898), 19 Ind. App. 252.

7.

Under the statute, when a cause is venued from one county to another, the clerk of the proper court of the latter county shall receive the transcript and papers, docket the action in its order among the other causes, and the cause shall be tried, or otherwise disposed of, in the same manner as if it originated in said court (§424 Burns 1908, §413 R. S. 1881), and the latter court has whole and sole jurisdiction

over such cause. *Foster* v. *Potter* (1865), 24 Ind. 363; *Toledo, etc., R. Co.* v. *Wright* (1879), 68 Ind. 586, 34 Am. Rep. 277.

After the change was made, the venue of the cause of action was in the Delaware Circuit Court, and that court had the same jurisdiction and power to make any order or ruling that it would have had, had the case been properly brought in said court in the first instance (4 Ency. Pl. and Pr. 487), and even after change of parties (*State* v. *Hays* [1885], 88 Mo. 344; *R. E. Stafford & Co.* v. *L. & H. Blum* [1894], 7 Tex. Civ. App. 283, 27 S. W. 12) and irrespective of the residence of the parties (*East St. Louis, etc., R. Co.* v. *Enright* [1893], 47 Ill. App. 494).

If the amendment and addition, as here made, could properly be made in a case originating in said court, the same amendment and addition could be made in a cause brought there on a change of venue. The amendment made no new cause of action, and required no new defense, and therefore was one that properly might be made. 1 Hogate, Pl. and Pr. §606.

Complaint is made of the giving of instruction fifteen. By this instruction the jury was told that in assessing damages it should consider the difference in the fair rental value of the farm of appellees from January 1, 1905, to October 16, 1906. The objection to this instruction is that it authorized the jury to assess damages accruing after the bringing of the action.

The original complaint in this case was filed in the Randolph Circuit Court on April 25, 1906, but on October 16, 1906, appellees filed a supplemental complaint, for the purpose of showing the continuation of the maintenance of the nuisance by appellant, as complained of in the original complaint, up to the filing of said supplemental complaint. The maintenance of a nuisance is a continuous offense, and damages may be recovered so long as such

nuisance is maintained. It is true that in an action founded on a tort the plaintiff can recover only such damages as had accrued at the commencement of the action. *Musselman* v. *Manly* (1873), 42 Ind. 462; *Maxwell* v. *Boyne* (1871), 36 Ind. 120. While this is true, as a general rule, we can see no reason for the application of this rule to cases like the present, where the tort is a continuous offense, and where a supplemental complaint has been filed showing the continuation of the wrong up to the time of the filing of the supplemental complaint. Supplemental pleadings are specifically authorized by our statutes. §408 Burns 1908, §399 R. S. 1881.

The purpose of such supplemental complaint is to bring into the record new facts that have accrued since the commencement of the action, so that the court may render judgment upon the facts as they exist at the time of its rendition. *Musselman* v. *Manly, supra; Pouder* v. *Tate* (1892), 132 Ind. 327.

The original complaint and the supplemental complaint constitute plaintiff's complaint and cause of action. *Peters* v. *Banta* (1889), 120 Ind. 416; *Chapman* v. *Jones* (1898), 149 Ind. 434.

A supplemental complaint is not an amendment to the complaint; but its office is to bring forward a matter, proper to be litigated, along with the matters contained in the original complaint, that has accrued since the commencement of the action, and it assumes that the original complaint is to stand as it originally stood. *Chapman* v. *Jones, supra; Pouder* v. *Tate, supra.*

Applying these rules, it seems proper in a case like this to file a supplemental complaint, and litigate the question of damages up to the time of the filing of such supplemental complaint. This is in entire accord with the theory of the uses of the supplemental complaint. Otherwise a supplemental complaint would serve no useful purpose. There was

no error in this instruction. For the same reasons there was no error in the refusal of the court to strike out the supplemental complaint.

The establishment of the foregoing principles determines all the other questions presented.

Judgment affirmed.