## NIAGARA OIL COMPANY *v.* OGLE.

### [No. 21,961.   Filed April 3, 1912.]

1. NUISANCE.—*Action for Abatement and Damages.—Pleading.—Contributory Negligence.*—In an action to abate a nuisance and for damages for its maintenance, under §§291-293 Burns 1908, §§289-291 R. S. 1881, plaintiff need not aver freedom from contributory negligence, nor that the injury could not have been avoided by the use of ordinary care.   p. 294.

2. MINES AND MINERALS.—*Oil Wells.—Injury to Adjoining Property.—Injunction.—Damages.*—The pumping of oil and salt water from a well, and permitting it to flow and spread upon adjoining realty so as to collect thereon and destroy the crops and timber thereon, and permanently injure the productive power of the land and render it useless for agricultural purposes, is an injury that may be enjoined and for which damages may be recovered. p. 295.

3. LANDLORD AND TENANT.—*Renting on Shares.—Possession of Crops.*—Where land is rented under a contract by which the landlord is to receive a share of the crops as rent, to be delivered by the tenant after measurement, the tenant is entitled to the possession of such crops until they have been measured.   p. 299.

4. LANDLORD AND TENANT.—*Renting on Shares.—Action for Injury to Crops.*—Where land is rented for a share of the crops, both the landlord and the tenant have an interest in such crops and are both entitled to damages for their injury or destruction. p. 299.

5. LANDLORD AND TENANT.—*Renting on Shares.—Action by Landlord for Injury to Crops.*—In the absence of an objection for defect of parties, a landlord may, alone, maintain an action for damages sustained by injury to crops in which his interest is undivided.   p. 299.

6. LANDLORD AND TENANT.—*Renting for Cash.—Action for Injury to Crops.*—Where land is rented for cash, the tenant only can recover for injury to crops raised during the tenancy.   p. 300.

7. NUISANCE.—*Abatement.—Damages.—Permanent Injury.*—Where the productive power of land has been destroyed by reason of the existence of a nuisance, a recovery for permanent injury to the land is authorized, although such nuisance can be abated. p. 300.

8. JUDGMENT.—*Enjoining Act Already Abandoned.—Remedy.*—In an action to enjoin a nuisance and to recover damages occasioned thereby, where, notwithstanding a finding that the acts creating the nuisance have been discontinued, a judgment for damages

and decreeing an injunction is rendered for plaintiff, defendant's remedy is to move to modify the judgment by eliminating the portion thereof decreeing an injunction. p. 301.

9. NUISANCE.—*Damages.—Reduction of Damages.—Duty of Injured Party.*—A person who is injured by the maintenance of a nuisance is not bound to do anything to prevent or reduce the damage occasioned thereby. p. 301.

From Henry Circuit Court; *Ed. Jackson*, Judge.

.Action by Elijah Ogle against the Niagara Oil Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Affirmed.*

*Abram Simmons* and *Frank C. Dailey*, for appellant.

*Orr & Orr*, for appellee.

MORRIS, C. J.—Appellee, in February, 1906, commenced this action against appellant for damages for nuisance, and to enjoin the maintenance thereof.

A demurrer to the complaint, for want of facts, was overruled. There was a trial by court, a special finding of facts, and conclusions of law thereon stated. Defendant excepted to each conclusion of law. Judgment for plaintiff for damages, and enjoining defendant from continuing the acts complained of.

Appellant vigorously assails the sufficiency of the complaint. It alleges, among other things, that appellee is the owner of a farm in Delaware county; that appellant is an oil company, and is the owner of gas and oil leases of a farm owned by one Shaffer, lying south of and adjoining appellee's farm, and also of a farm owned by one Allison, which lies south of and adjoins the Shaffer farm; that appellant has bored wells 1,200 feet deep on the Shaffer and Allison farms, and equipped them with pumps, by means of which it has drawn large quantities of salt water and oil from said wells to the surface of the land, and has in no way confined them, but has permitted them to spread out over the Shaffer and Allison farms, and to run therefrom

onto the land of appellee; that as a result thereof the oil and salt water have collected and stood on appellee's farm to a depth of from six to eighteen inches, and have rendered from fifteen to twenty acres of the farm unfit for cultivation, wet and unhealthful, and have killed the growing crops thereon, and have also killed a large amount of timber growing thereon.

It is further alleged that the water permitted to flow on appellee's land, as aforesaid, is salty and impure, and destroys the productive power of the land over which it flows, or on which it stands, and destroys the use of such land for agricultural purposes; that said impure water, which has been flowing onto appellant's land and standing thereon, did not, and would not, come to the surface by natural flow or means, but has been drawn to the surface, by appellant, by means of pumps.

It is further averred that in November and December, 1905, appellant collected and stored in tanks on the Shaffer and Allison farms, 500 barrels of oil, and permitted it to escape from the storage tanks and to flow over said farms onto appellee's farm, and to spread out over the farm, where it is still standing; that the oil and salt water standing on appellee's farm emit foul and noxious odors, and are dangerous to the health of plaintiff's family and to the community.

It is also alleged that, unless enjoined, appellant will continue to cause and permit oil and salt water to flow onto appellee's lands, and appellee prays that appellant be enjoined from flowing oil and water over and upon his land, and demands judgment for damages alleged to have been sustained already.

It is insisted that the complaint is defective because it contains no averment that plaintiff was free from contributory negligence, and no averment of facts showing

1.   that plaintiff could not have protected his property by exercising ordinary care.

This theory is untenable.   This is not an action for dam-

ages for negligence, but for damages for the maintenance of a nuisance, and to enjoin or abate it. §§291-293 Burns 1908, §§289-291 R. S. 1881. In cases of this character, the rules governing the sufficiency of complaints for negligence have no application. *Niagara Oil Co.* v. *Jackson* (1911), 48 Ind. App. 238, 91 N. E. 825; *City of Lebanon* v. *Twiford* (1895), 13 Ind. App. 384, 41 N. E. 844; *Williamson* v. *Yingling* (1881), 80 Ind. 379; 29 Cyc. 1155.

Appellant's counsel also claim that the complaint is insufficient, because the use which appellant made of the lands was in the exercise of the lawful right of the superior

2. proprietor, and detriment to appellee's lower land is *damnum absque injuria;* and, in support of this proposition, cites *Pennsylvania Coal Co.* v. *Sanderson* (1886), 113 Pa. St. 126, 6 Atl. 453, 57 Am. Rep. 445, and *Barnard* v. *Sherley* (1893), 135 Ind. 547, 34 N. E. 600, 35 N. E. 117, 24 L. R. A. 568, 41 Am. St. 454.

In the Sanderson case it was held that a coal mining company, which discharged from its mine, water that so polluted the mountain stream into which it flowed as to render the waters of the stream unfit for domestic purposes by the lower riparian owners, was not liable to the latter for the injury, in the absence of malice or negligence. The court held that the mining of coal was lawful, and could be prosecuted only where the coal is found, and that the enjoyment of the stream of water by the lower owners must *ex necessitate* give way to the interests of the community, in order to permit the development of the natural resources of the country, and to make possible the prosecution of the lawful business of mining coal.

Appellant contends that oil must be mined where found, and its mining is a lawful business, and the prosecution thereof requires that the owner of lower lying land must bear the burden of the annoyances and inconveniences necessarily resulting in the careful prosecution of the business.

In *Barnard* v. *Sherley, supra,* this court held that, under

the facts in that case, a lower riparian owner could not recover from an upper proprietor for the pollution of a stream by contaminating the water of an artesian well which flowed into it. While the doctrine of the case of *Pennsylvania Coal Co.* v. *Sanderson, supra,* seems to have been approved to some extent in *Barnard* v. *Sherley, supra,* it has since been greatly limited by the Supreme Court of Pennsylvania. *Hindson* v. *Markle* (1895), 171 Pa. St. 138, 33 Atl. 74; *Commonwealth, ex rel.,* v. *Russel* (1895), 172 Pa. St. 506, 33 Atl. 709; *Keppel* v. *Lehigh Coal, etc., Co.* (1901), 200 Pa. St. 649, 50 Atl. 302. It has been expressly repudiated in England, Ohio, New Jersey, Alabama and Tennessee. *Young* v. *Bankier Distillery Co.,* [1893] App. Cas. 691; *Straight* v. *Hover* (1909), 79 Ohio St. 263, 87 N. E. 174, 22 L. R. A. (N. S.) 276; *Beach* v. *Sterling Iron, etc., Co.* (1895), 54 N. J. Eq. 65, 33 Atl. 286; *Drake* v. *Lady Ensley Coal, etc., Co.* (1893), 102 Ala. 501, 14 South. 749, 48 Am. St. 77, 24 L. R. A. 64; *H. B. Bowling Coal Co.* v. *Ruffner* (1906), 117 Tenn. 180, 100 S. W. 116, 9 L. R. A. (N. S.) 923, 10 Ann. Cas. 581, note p. 587.

In the last cited case, the court said: "We are of opinion that the doctrine announced in *Pennsylvania Coal Co.* v. *Sanderson, supra,* is opposed by the great weight of authority in this country and in England, and is in our judgment subversive of fundamental private rights while it discards, discredits, and discrowns the honored principle of the common law embodied in the maxim *'sic utere tuo ut alienum non laedas.'* "

In *Straight* v. *Hover, supra,* the Supreme Court of Ohio said: "The Sanderson case was a manifest departure from the rule of law often stated, and generally regarded as well settled, that although there is a servitude upon the lower proprietor to receive the natural flow of water from higher grounds, it is his right to receive it in its natural state and without deleterious change effected by artificial means. The case was cited as an authority in *John Young & Co.* v.

*Bankier Distillery Co.,* [1893] A. C. 691, where Lord Watson said of it: 'Against the principle the appellants were able to cite only one American case, which I do not notice further, because it was decided on the express ground that in so far as concerns the present question, the law of Pennsylvania essentially differs from the law of England.' In another opinion in the same case it was said that *Pennsylvania Coal Co.* v. *Sanderson* proceeded upon considerations which characterize making law rather than interpreting the law so as to give effect to sound, just and well recognized principles as to the common interest and rights of upper and lower proprietors in the running water of a stream.''

In as much as the oil and salt water which were permitted to flow onto appellee's farm from appellant's well did not follow any watercourse, but spread out over the surface and flowed onto appellee's farm, which was on a lower level, appellee's counsel maintain that the complaint was sufficient, regardless of the doctrine of the Sanderson case, because the salt water and oil were brought to the surface by artificial means, and so deposited on the surface that injury to appellee must necessarily result.

The case of *Niagara Oil Co.* v. *Jackson, supra,* was decided by the Appellate Court in 1910, and a petition to transfer the cause to this court was denied in 1911. The decision in that case fully supports appellee's contention, and consequently it is not necessary here to consider the rule announced in the Sanderson case. The complaint was sufficient. *Templeton* v. *Voshloe* (1880), 72 Ind. 134, 37 Am. Rep. 150; *City of Garrett* v. *Winterich* (1909), 44 Ind. App. 322, 87 N. E. 161, 88 N. E. 308; *Anderson* v. *Drake* (1909), 24 S. D. 216, 123 N. W. 673, 27 L. R. A. (N. S.) 250, and cases cited.

The court, among other things, found that appellee, for more than two years preceding the commencement of the action, owned and lived on the farm described in the complaint, containing about 105 acres, all of which were under

cultivation, except five acres on which there was growing timber; that during this time the farm was cultivated by a tenant, under a contract by which all the crops raised were divided "half and half" between landlord and tenant; that in March, 1905, appellant drilled two oil wells, 1,200 feet deep, on the Shaffer farm, and in May following drilled an oil well on the Allison farm; that large quantities of salt water and oil were pumped from the wells after the completion thereof, and flowed onto appellee's farm, and accumulated and stood thereon in pools and ponds to the depth of from six to eighteen inches, and spread out over about fifteen acres of the farm, and rendered the same impassable, wet and unhealthful, and destroyed the productive power of the land over which it flowed and on which it stood. It is further found that the flooding by appellant of appellee's land destroyed, killed, damaged and injured the growing crops, meadows, grains and grasses thereon belonging to appellee, up to the time of the commencement of the action, and damaged, injured and killed the growing timber on the farm, and permanently injured the land, and that appellee has sustained damages in the sum of $485. The court also found that since July, 1906, appellant "has ceased to operate said wells, and has abandoned said operations for oil, and has ceased to flood or flow salt water, or oil, on plaintiff's lands."

The court stated as its conclusions of law that defendant's acts constituted a nuisance, and plaintiff was entitled to judgment for damages in the sum of $485, and a decree abating the nuisance, and enjoining defendant from flooding his lands with salt water and oil.

The cause was tried in December, 1906.

It is maintained by appellant that the court erred in its conclusions of law, because, as to the crops at least, the right of recovery was in the tenant, and not in the landlord, and it cites the cases of *Cunningham* v. *Baker* (1882), 84 Ind.

597, and *Chicago, etc., R. Co.* v. *Linard* (1884), 94 Ind. 319, 48 Am. Rep. 155.

It may be conceded that where land is rented to a tenant under a contract by which the landlord is entitled to a share of the crops raised on the land, as rent, the landlord's

3.  share to be delivered to him by the tenant, after measuring in the bushel, or weighing, the tenant is entitled to the possession of the crops until they have been measured or weighed; but in this case the right of possession is in noway involved. The action is for damages for permanent injuries to the real estate, and for injury to, and destruction of growing crops.

While growing, both landlord and tenant had an interest in the crops and both would be entitled to damages for their injury or destruction; whether, at the time this suit

4.  was commenced, the landlord and tenant owned the crops as tenants in common, or whether they were in the possession of the tenant, under a contract for the delivery of a half thereof, in the bushel or by weight, to the landlord for rent when harvested, or whether they had been, when the action was commenced, divided in equal shares between landlord and tenant, would not affect the landlord's right to an action for damages, for injury, by a third person, to the same.

No right of possession of crops is here involved. The relief prayed is for damages for injury to specific property, and such relief will not be denied simply because a third party may be in the rightful temporary possession thereof.

No question is raised here concerning a defect of parties plaintiff; and certainly, in the absence of such objection, the landlord, though the owner of the undivided half,

5.  only, of the crops, may, alone, maintain an action for such damages as he may have sustained by the injury. *Woodruff* v. *North Bloomfield, etc., Min. Co.* (1883), 8 Sawyer 628, and cases cited; Joyce, Law of Nuisances, §445.

In *Chesround* v. *Cunningham* (1832), 3 Blackf. *82, it was held that one tenant in common may sue separately, in ejectment, for his undivided share of real estate, or in trespass, for mesne profits.

In *Bowser* v. *Cox* (1892), 3 Ind. App. 309, 29 N. E. 616, 50 Am. St. 274, it was held that one heir of a lessor might sue for rent accrued on a lease executed by the ancestor without joining the other heirs of the lessor.

In this case, the inference most favorable to appellant is that appellee was the owner as tenant in common with the tenant of the crops injured. In the absence of any question of defect of parties plaintiff, appellee's right to sue alone for such damage as he sustained cannot be questioned.

It is also claimed by counsel for appellant that a landlord cannot sue for injuries to the enjoyment and occupation of premises while they are in the possession of the tenant, by the maintenance of a nuisance, not of a permanent character, on adjoining premises.

6. Where land is rented for cash, it is manifest that the tenant only could recover for injuries to crops during the tenancy. But where, as here, the landlord has an interest in the crops, such rule does not apply.

It is also insisted that where a nuisance can be abated, there can be no recovery for a permanent injury, and

7. *Muncie Pulp Co.* v. *Martin* (1904), 164 Ind. 30, 72 N. E. 882, is cited in support of the proposition. The complaint alleges and the court finds that not only were the growing crops injured, but, by reason of the deposit of oil and salt water on the land, its productive power was destroyed. Recovery for permanent injury to the land was authorized.

It is contended that the court erred in decreeing an injunction, in face of the finding that after the action was commenced, but before the trial, appellant abandoned the operation of its wells.

There was no finding that appellant had surrendered the

leases in question. Assuming, however, that the finding of the court is to the effect that operations would not be

8. resumed, appellant's proper remedy in such case was a motion to modify the judgment, by eliminating the portion thereof decreeing an injunction. *Migatz* v. *Stieglitz* (1906), 166 Ind. 361, 365, 77 N. E. 400. No such motion was made. In any event, if the resumption of operation is not contemplated, appellant cannot be harmed.

It is further claimed that it was appellee's duty

9. to prevent, if possible, or, in any event, to reduce to the lowest minimum, the damage to his land and crops.

In Wood, Nuisances (3d ed.) §435, it is said: "It is the duty of every person or public body to prevent a nuisance, and the fact that the person injured could, but does not, prevent damages to his property therefrom is no defense either to an action at law or in equity. A party is not bound to expend a dollar, or to do any act to secure for himself the exercise or enjoyment of a legal right of which he is deprived by reason of the wrongful acts of another."

No reversible error was committed in either the admission or the exclusion of evidence. The decision of the trial court is fully supported by the evidence. Judgment affirmed.

NOTE.—Reported in 98 N. E. 60. See, also, under **(1)** 27 Cyc. 1263; **(2)** 27 Cyc. 791; 56 Am. Rep. 6; **(3)** 24 Cyc. 1469; **(4)** 24 Cyc. 1468; Ann. Cas. 1912 D. 120; **(5)** 24 Cyc. 930; **(6)** 24 Cyc. 1073; **(7)** 29 Cyc. 1273; **(8)** 23 Cyc. 873; **(9)** 13 Cyc. 75. On the question of the pollution of streams by mining operations, see 22 L. R. A. (N. S.) 276 and 38 L. R. A. (N. S.) 272.