Philip MOWRER, as Administrator of the Estate of Estelle Lowe, Deceased, Plaintiff-Appellee,

v.

ASHLAND OIL & REFINING CO., INC., Defendant-Appellant.

No. 74–1568.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1975.

Decided July 3, 1975.

Frederick P. Bamberger, George A. Porch, Evansville, Ind., for defendant-appellant.

James G. McDonald, Jr., William J. Marshall, Princeton, Ind., for plaintiff-appellee.

Before PELL and TONE, Circuit Judges, and PERRY, Senior District Judge.*

* Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

TONE, Circuit Judge.

In this diversity case arising under Indiana law, the issue presented is whether a business conducting, without negligence, an activity authorized by statute and approved by the appropriate state regulatory agency can be liable under a theory of nuisance for damage to adjacent property when the plaintiff[1] may be chargeable with contributory negligence. Most of the facts are stipulated, although the plaintiff's case at trial included two days of evidence, defendant choosing not to put on a case. The jury returned a verdict for plaintiff in the amount of $12,000, upon which judgment was entered. A motion by defendant for judgment notwithstanding the verdict was denied by the District Court.

The relevant facts, as established by the stipulations of the parties, may be summarized as follows:

Plaintiff and her predecessors in interest, her parents owned in fee simple about 135 acres of land in Gibson County, Indiana. In about 1952 the land was leased for oil and gas exploration. The lessee drilled three wells along the western edge of the property, offsetting three wells which had been drilled on the adjacent property. Only one of the wells on plaintiff's property, known as the Kimball Well No. 1, is involved here. By 1956 it had ceased operating, and it was plugged in that year by plaintiff's lessee.

Defendant was the lessee under the oil and gas lease on the adjacent property, which was known as the Callis lease. In September 1955, before the well on plaintiff's land was plugged, defendant commenced waterflood operations, which consisted of injecting salt water at high pressure into the oil strata to force the remaining oil from the "cypress" oil sands into the Callis operating wells. The waterflood operation had been authorized and approved by the Oil and Gas Division of the Indiana Department

1. The present plaintiff's decedent, Estelle Lowe, was alive at the trial and will be referred to herein as the plaintiff.

of Conservation pursuant to the statutory requirements. See Ind.Code 13–4–7–20 and Ind.Code 13–4–7–14. In 1958 and again in 1959 or 1960, long after the plugging of the well on plaintiff's land in 1956, crude oil was found seeping out on plaintiff's land at ground level around that well, and in July 1963, crude oil leaked into and contaminated the nearby fresh water well that supplied plaintiff's domestic water. The parties stipulated as follows:

> "That defendant's water flood caused salt water and oil to migrate from the cypress sands under the Callis lease flooded by the defendant to the cypress sands under plaintiff's land.

. . .

> "That the crude oil in plaintiff's water well migrated from the Cypress sand up the plugged Kimball well No. 1, into the fresh water sand and into plaintiff's well."

■ Plaintiff alleged in her complaint that the waterflood created a private nuisance, and the jury was instructed on that theory of the case. In ruling on defendant's motion for judgment notwithstanding the verdict, the District Court relied principally on the doctrine of liability without fault for abnormally dangerous, or ultrahazardous, activity, which the Indiana Supreme Court adopted in *Enos Coal Mining Co. v. Schuchart,* 243 Ind. 692, 188 N.E.2d 406 (1963). Many American courts have viewed abnormally dangerous activity as one of the kinds of conduct that gives rise to a private nuisance[2] but the Indiana Supreme Court in *Enos Coal* does not invoke the doctrine of nuisance.[3] Applying Indiana law, we think liability could

have been supported by the facts of this case on either theory, nuisance or abnormally dangerous activity, but since the case was tried and the jury was instructed on the theory of nuisance, we consider the case under that theory.

■ Under Indiana statute, a remedy is provided for maintaining a private nuisance:

> "Whatever is injurious to health, or . . . an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." Ind. Code 34–1–52–1.

Neither the lawfulness of a business allegedly constituting a nuisance nor lack of negligence in its conduct is a defense. *Indiana Pipe Line Co. v. Christensen,* 195 Ind. 106, 115, 143 N.E. 596, 599–600 (1924); *Northern Indiana Public Service Co. v. Vesey,* 210 Ind. 338, 352, 200 N.E. 620, 626 (1936). Nor is the contributory negligence of the plaintiff a defense. *Niagara Oil Co. v. Ogle,* 177 Ind. 292, 294–295, 98 N.E. 60, 62 (1912); *Niagara Oil Co. v. Jackson,* 48 Ind.App. 238, 244, 91 N.E. 825, 827–828 (1910). The reasonableness of the use of land is available as a defense (*Niagara Oil Co. v. Jackson, supra,* 48 Ind.App. at 241, 91 N.E. at 826–827) and presents a question for the jury. *Ohio Oil Co. v. Westfall,* 43 Ind. App. 661, 663–664, 88 N.E. 354, 355 (1909).

■ Several of the Indiana cases just cited involve the escape of oil from the defendant's land over the surface to adjoining land, where the escaping oil inflicts harm. It is but a short step from these cases to the case at bar, where

---

**2.** See W. Prosser, *Law of Torts* 527–529, 597 (3d ed. 1964). Prosser states (*id.* at 594–595) that the doctrine of nuisance "has reference to the interests invaded, to the damage or harm inflicted, and not to any particular kind of act or omission which has led to the invasion," and that the types of conduct that may give rise to a nuisance include intentional invasions of the interests of others, negligence, and ab-

normal, or ultrahazardous, activities. But see Keeton, *Trespass, Nuisance, and Strict Liability,* 59 Colum.L.Rev. 457 (1959).

**3.** An early Indiana Appellate Court case cited by Prosser (see note 2) does treat abnormally dangerous activity under the heading of nuisance. *Moore v. City of Bloomington,* 51 Ind. App. 145, 95 N.E. 374 (1911).

water from defendant's land invaded the plaintiff's land underneath the surface.[4] The trial court correctly held that the doctrine of nuisance was applicable and that therefore the lawfulness of the business and the absence of negligence were not defenses.

The issue of the reasonableness of the defendant's activity, as well as the issues of proximate cause and foreseeability, was properly submitted to the jury in accordance with Indiana law. The court also submitted to the jury the questions of whether the well through which the seepage came was properly plugged and, if not, whether the improper plugging was the cause of plaintiff's damage. The jury resolved these questions relating to contributory negligence in favor of the plaintiff, but it was unnecessary to submit them because, as we have noted, contributory negligence is not a defense in a nuisance case.

■ In overruling the motion for judgment notwithstanding the verdict, the District Court relied principally on the doctrine of strict liability for the conduct of an abnormally dangerous activity, a doctrine which originated with *Rylands v. Fletcher*, L.R. 3 H.L. 330 (1868) (affirming *Fletcher v. Rylands*, L.R. 1 Ex. 265 (1866)), and was applied in *Enos Coal Mining Co. v. Schuchart, supra*, 243 Ind. 692, 188 N.E.2d 406 (1963). The waterflood, an artificial and intentional invasion of plaintiff's property conducted as a part of a business, introduced a risk of serious harm to the land of others which could not be eliminated by the exercise of care and was not a matter of common usage. 3 *Restatement of Torts* § 520 and comments

(1938); see also *Restatement (Second) of Torts* § 520 and comments (Tent.Draft No. 10, 1964). It was accordingly an abnormally dangerous activity for the conduct of which defendant would have been strictly liable had plaintiff chosen to proceed on that theory.

In the *Enos Coal* case, *supra*, the Indiana Supreme Court, rejecting the argument that the defendant's blasting activities were "necessary" and, even though they caused some damage to neighboring properties were a "reasonable use," said:

> "A business should bear its own costs, burdens, and expenses of operation, and these should be distributed by means of the price of the resulting product and not shifted, particularly, to small neighboring property owners for them to bear alone." 243 Ind. at 697, 188 N.E.2d at 408.

This rationale is applicable here, even though the case was tried on a nuisance theory. Whether absolute liability for abnormally dangerous activity should be viewed as conceptually distinct from a private nuisance or as a kind of conduct that can give rise to a nuisance, the American cases have generally amalgamated these theories of liability, and the underlying policies of the theories are similar.[5] It was, accordingly, appropriate for the District Court to look to the *Enos Coal* case for guidance in ruling upon the issue of liability presented by the post-trial motion in this private nuisance case. Doing so confirmed the correctness of the judgment, which had been reached on the theory of private nuisance.

Affirmed.

---

**4.** Two cases interpreting Oklahoma law have held waterflood operations to be private nuisances. *Gulf Oil Corp. v. Hughes*, 371 P.2d 81 (Okla.1962); *Greyhound Leasing & Financial Corp. v. Joiner City Unit*, 444 F.2d 439 (10th Cir. 1971).

**5.** See note 2, *supra*. The passage from *Enos Coal* quoted in the above paragraph of the text suggests that the defense of reasonable use would not have been available to the defend-

ant, if the plaintiff had proceeded on the theory of strict liability for conducting an abnormally dangerous activity. Indeed, the *Enos Coal* rationale, as a statement of broad policy, may cast doubt on the rule stated in the earlier Indiana cases that reasonableness of use is a defense in a private action. In any event, the jury in the case at bar decided the reasonable-use issue adversely to the defendant.