**WITCO CORPORATION, Plaintiff,**

v.

**CITY OF INDIANAPOLIS, and Marion County, Defendants.**

**No. IP 89–1268–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

April 22, 1991.

John B. McCabe, Richard Wm. Strawbridge, Chicago, Ill., Nicholas C. Nizamoff, Indianapolis, Ind., for plaintiff.

Kristie L. Hill, Allen K. Pope, Corp. Counsel, City–County Legal Div., Indianapolis, Ind., for defendants.

DILLIN, District Judge.

This matter comes before the Court on the defendants' motion for summary judgment. For the following reasons, the motion is granted in part and denied in part.

### Background

On May 25, 1988, a fire began inside a building located at 3333 East Massachusetts Avenue in Indianapolis. The premises had been acquired by the City of Indianapolis and Marion County (collectively, the City) following tax delinquency proceedings. The fire spread to adjacent property owned by plaintiff Witco Corporation (Witco), causing extensive damage. Plaintiff alleges that the City, as owner of the property, negligently failed to maintain the property such that the property remained vacant and open to vagrants and unauthorized persons, one or more of whom gained access and started the fire by use of a cooking pot. City investigators who examined the fire scene testified that the most likely cause of the fire was use of a cooking pot for heating or cooking.

## Discussion

Summary judgment, pursuant to Rule 56, F.R.Civ.P., is proper only when there is no genuine issue of material fact. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). The burden of establishing the lack of any genuine issue of material fact is upon the movant, and all doubts are to be resolved against him. *Yorger v. Pittsburgh Corning Corp.,* 733 F.2d 1215, 1218 (7th Cir.1984). If the moving party has met this initial burden and the nonmoving party claims the existence of a question of fact, the Court must then determine whether a genuine issue has been established as to that fact. *Big O Tire Dealers,* 741 F.2d at 163. Summary judgment must be entered against the non-moving party where the nonmoving party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986). "In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

At the summary judgment stage, the judge's function is not to weigh the evidence, but rather to determine whether there is a genuine issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). The trial courts should act with caution in granting summary judgment, and may deny it where there is reason to believe that the better course would be to proceed to a full trial. *Id.,* 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed. at 216.

### A. Immunity

The City claims that it is entitled to governmental tort immunity under three subsections of Ind.Code § 34–4–16.5–3. The relevant portions of that statute provide the following:

**Immunity from liability.**—A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

(6) The performance of a discretionary function;

(7) The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment;

(9) The act or omission of someone other than the governmental entity employee. . . .

### 1. Discretionary function

The City first claims that it is immune from liability in this case under Ind.Code § 34–4–16.5–3(6), "performance of a discretionary function."

The leading case interpreting discretionary-act immunity under the Indiana Tort Claims Act, Ind.Code § 34–4–16.5–1 to –20, is *Peavler v. Board of Commissioners,* 528 N.E.2d 40 (Ind.1988). In *Peavler,* the Indiana Supreme Court reviewed the history and purpose of governmental immunity and rejected the former ministerial/discretionary distinction, stating that if "discretionary functions included every act which involves any element of choice, judgment or ability to make responsible decisions, every act would fall within the exception." 528 N.E.2d at 43.

In place of the ministerial/discretionary distinction, the *Peavler* court adopted the planning/operational test which has been used by the United States Supreme Court in analyzing immunity claims under the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (1982). *See Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

The *Peavler* court elaborated on the specifics of analysis under the planning/operational test with the following description:

Planning activities include acts or omissions in the exercise of a legislative, judicial, executive or planning function that involves formulation of basic policy decisions characterized by official judgment or discretion in weighing alternatives and

choosing public policy. *Marrek v. Cleveland Metroparks Board of Commissioners*, 9 Ohio St.3d 194, 459 N.E.2d 873 (1984). Government decisions about policy formation that involve assessment of competing priorities and a weighing of budgetary considerations or the allocation of scarce resources are also planning activities. *Industrial Indemnity Co. v. Alaska*, 669 P.2d 561, 564–65 (Alaska 1983).

528 N.E.2d at 45.

In resolving the issue of immunity in the two cases before it, the *Peavler* court sought specific evidence which would show that "a policy decision, consciously balancing risks and benefits, took place." 528 N.E.2d at 47. If the county defendant in either case had been able to show that the commissioners had "engaged in a policy oriented decision-making process," the court continued, it would not second-guess their judgment. *Id.* Absent such evidence, however, the court could not conclude that no question of material fact remained regarding the county's immunity.

■ Under *Peavler* then, "professional judgments will no longer be immune from legal challenge under IC 34–4–16.5–3(6) unless they can be properly characterized as policy decisions that have resulted from a conscious balancing of risks and benefits and/or weighing of priorities." *Borne v. Northwest Allen County School Corp.*, 532 N.E.2d 1196, 1200 (Ind.App.1989).

■ Applying the *Peavler* planning/operational test to the facts of this case, we find that the City's claim of immunity must fail.

The City argues that its conduct with regard to management of the property was discretionary and should be protected by governmental immunity. The problem with the defendants' argument is that it is unsupported by evidence of policy oriented decision-making of the sort called for by *Peavler*. While decisions as to whether or not to post guards or demolish the building may have been the topic of discussions between officials within the various city government branches concerned with the disposition of the property, such decisions would be at the operational rather than the planning level. The defendants state that it was the general policy of the City–County Council to comply with city ordinances and the state code provisions applicable to such property and return seized property to tax rolls as quickly as possible. Maintaining a policy of complying with the law is not the same as engaging in "official judgment in the weighing of alternatives, competing priorities and budgetary considerations." *See Cromer v. City of Indianapolis*, 540 N.E.2d 663, 665–66 (Ind.App. 1989). Allowing the buildings at 3333 East Massachusetts Avenue to remain empty was not a decision arising out of the weighing of priorities and alternatives, but was merely an operational decision, or indeed was the consequence of no decision having been made at all.

Moreover, the day-to-day maintenance decisions of DPW's real estate manager are even more clearly operational activities rather than planning. By her own testimony, the real estate manager lacked authority to make more than very minor repairs. At most, she was applying general principles and not fashioning them; thus her conduct does not give rise to immunity. *See Borne*, 532 N.E.2d at 1202.

*2. Enforcement or nonenforcement of a law*

■ The City next contends that it is immune from liability under Ind.Code § 34–4–16.5–3(7). We agree with the plaintiff that this provision is wholly inapplicable to this situation.

The purpose of subsection seven is to ensure that public employees can exercise their judgment as they carry out their law enforcement duties, without threat of litigation over decisions they must make on the job. *Indiana Department of Correction v. Stagg*, 556 N.E.2d 1338, 1343 (Ind. App.1990). The case now before the Court simply does not raise such concerns.

First, the City's efforts to enforce tax laws occurred well before the fire. It is the City's alleged negligence in allowing the building to stand empty and unsecured

which provides the basis for the lawsuit, not the City's enforcement of tax laws.

Next, the City cannot claim immunity for any failure to enforce trespass, vandalism or arson laws. As the plaintiff observes, the City is not being sued in its law enforcement capacity at all, but rather in its role as owner of real property and the party in possession of that property. The plaintiff's case is based on traditional tort principles of landowner liability and simply alleges that the City, as landowner, failed in its duty of care. Subsection seven does not apply.

### 3. Acts of others

■ The City also claims it is immune under subsection nine. This subsection provides for governmental immunity when a loss results from the act or omission of someone other than the governmental entity or its employees. The City argues that since the fire was alleged to have been caused by a vagrant or other intruder, and not a governmental employee, the City is immune. This argument misses the mark.

The negligence which the plaintiff alleges is the City's own negligence in allowing the property to become a fire hazard. The ignition of the fire by one or more vagrants was merely an allegedly foreseeable occurrence which produced the final loss. Where the government's conduct creates the conditions that foreseeably lead to a loss, so as to be a proximate cause of that loss, the government is not immune under the acts-of-others exception to liability. *Maroon v. State Dept. of Mental Health*, 411 N.E.2d 404, 417 (Ind.App.1980); *City of Bloomington v. Kuruzovich*, 517 N.E.2d 408 (Ind.App.1987).

### B. Evidence of negligence

■ The City argued in support of its motion for summary judgment that there is no evidence of the cause of the fire, and therefore no evidence of negligence; however, the plaintiff states that the City now intends to withdraw that portion of its motion. At any rate, the Court finds that portion of the motion untenable. Two city investigators concluded that the most likely cause of the fire was use of a cooking pot by an intruder in the building. Deposition testimony of various city officials supports the contention that the building was unsecured and frequently entered by vagrants. Under the plaintiff's theory of the case—that the City allowed the building to become vacant and to deteriorate in condition so as to present a fire hazard—there is now evidence to support the plaintiff's claim of negligence.

### C. Res ipsa loquitur

The doctrine of res ipsa loquitur is a rule of evidence whereby an inference of negligence can be drawn under certain circumstances. *Brinegar v. Robertson Corp.*, 550 N.E.2d 812, 814 (Ind.App.1990). The prerequisites to its application are: 1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; 2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and 3) it was not due to any voluntary action or contribution on the part of the plaintiff. *Id.* (citation omitted).

Whether the doctrine applies in a given case is a mixed question of law and fact. "The question of law is whether, under the evidence presented, the doctrine may apply; the factual determination is whether the permissible inference is to be drawn." *Shull v. B.F. Goodrich Co.*, 477 N.E.2d 924, 928 (Ind.App.1985).

■ In general, the mere occurrence of a fire does not raise a presumption of negligence in either the kindling or management of a fire. 65A C.J.S. *Negligence* § 220.25.

In *Brinegar*, owners of adjoining property brought an action against a mill owner after a fire at the mill spread to their property. Experts were unable to determine the cause of the fire. In the absence of Indiana cases addressing the application of res ipsa loquitur where the cause of the fire has not been established, the Indiana Court of Appeals considered cases from other jurisdictions and found "persuasive arguments that the doctrine should not apply under these circumstances." *Id.* at

815. For example, where homeowners' household goods were destroyed by a fire which started in an adjoining shed on an unimproved lot owned by the defendant, the court found that mere possession of the shed was not a sufficient basis for application of the rule. And where the only circumstance which could raise an inference of negligence was that witnesses had pinpointed the fire as originating in the defendant's furnace, the doctrine was unavailable since there was a lack of evidence "from which a jury could say that it is more likely than not that negligence was the cause of the fire." *Id.* at 815–16 (citing *Menth v. Breeze Corporation,* 4 N.J. 428, 73 A.2d 183, 18 A.L.R.2d 1071 (1950); *Hahn v. Eastern Illinois Office Equipment Company,* 42 Ill.App.3d 29, 355 N.E.2d 336 (1976)).

By contrast, the court in *Brinegar* referred to a California case where the doctrine was applied. In *Levy–Zentner Company v. Southern Pacific Transportation Company,* 74 Cal.App.3d 762, 142 Cal.Rptr. 1 (1977), the tenants of a warehouse owned by a railroad, along with owners and tenants of adjacent buildings, brought an action against the railroad for losses suffered in a fire which began in the railroad's warehouse and spread to the adjacent properties. The plaintiffs introduced evidence that the defendant railroad was negligent in that it failed to take precautions against itinerant activity and that railroad employees failed to notify the fire department promptly of the blaze. The court determined that the trial court's conditional instruction of res ipsa loquitur was proper.

The court found that where there was valid proof leading the experts to conclude that the most likely source of the fire was itinerant activity, the first element of res ipsa loquitur—accident of a nature which ordinarily does not occur in absence of negligence—was fulfilled. The court also found that there was abundant evidence that the railroad was in exclusive control of the instrumentality since it was responsible for the security of the warehouse and property. Finally, the court held that the railroad could not hold a "third party" responsible for the fire since "itinerant activity,

and the dangers it presented, was patent, foreseen and ignored" by the railroad. *Id.* 142 Cal.Rptr. at 13.

We find this case strikingly similar to *Levy–Zentner.* The plaintiff has presented more than conjectural evidence that the fire was started by vagrants. Fire investigators testified that the most likely cause was an unattended cooking or heating pot used by a vagrant. The investigators referred to photographs of the fire's point of origin showing what they believed to be the unattended pot. The plaintiff has also introduced evidence that maintenance and security of the premises were in the exclusive control of the defendants, and that the defendants were aware that vagrants frequently entered the premises. Under these circumstances, we cannot now say that the evidence at trial will be insufficient to invoke the doctrine of res ipsa loquitur. Summary judgment on that basis is therefore denied.

## D. Nuisance

█ In Count III, plaintiff claims that defendants knew that the property was in a hazardous condition and allowed it to remain so in violation of Ind.Code § 34–1–52–1, which statute provides the following:

> Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of property, is a nuisance, and the subject of an action.

We agree with the defendants that the plaintiff's claim does not sound in nuisance. Under the plaintiff's theory, the City created a nuisance by evicting occupants of the building and allowing it to stand vacant. The City likewise continued the nuisance by allowing the building to remain vacant and to deteriorate such that it became and remained a fire hazard. The problem with the theory is that the plaintiff's damages are not related to this alleged nuisance, but to the loss occasioned by the fire itself. There is no allegation, nor would any make sense, that the defen-

**840**

dants "maintained" or "continued" the fire. We agree with the defendants that the mere occurrence of a fire does not give rise to a nuisance claim.

The damages alleged in this case are unlike those where defendants have caused or allowed the discharge of some damaging or noxious substance onto their neighbors property over time. *See e.g., Indiana Pipe Line Co. v. Christensen,* 195 Ind. 106, 143 N.E. 596 (1924) (leakage of oil from pipe lines over years onto land); *Northern Indiana Public Service Co. v. Vesey,* 210 Ind. 338, 200 N.E. 620 (Ind.1936) (emission of poisonous gasses into air); *Niagara Oil Co. v. Jackson,* 48 Ind.App. 238, 91 N.E. 825 (1910) (discharge of water and oil impregnated with salts onto land); *Muncie Pulp Co. v. Keesling,* 166 Ind. 479, 76 N.E. 1002 (1906) (discharge of refuse from pulp mill into creek); *Sherk v. Indiana Waste Systems, Inc.,* 495 N.E.2d 815 (Ind.App. 1986) (noisy operation of landfill adjacent to hog breeding facility). In such cases, the essential question is whether one's use of property is reasonable as determined by the effect such use has on neighboring property. *See Sherk,* 495 N.E.2d at 818 (collecting cases). In the instant case, the property was not in commercial or other use, but was standing idle; the fire was not a byproduct of the use of the property, but rather was an allegedly foreseeable result of poor maintenance. The plaintiff has not cited, nor do we find any cases under Indiana law placing such an occurrence under nuisance theory, and we find no reason to do so now. Plaintiff's claim falls properly under negligence theory and not nuisance.

### Conclusion

The Court rejects defendants' arguments for summary judgment on the basis of immunity or lack of evidence of negligence. Further, we deny summary judgment on the plaintiff's allegations that the doctrine of res ipsa loquitur applies to this case. Finally, we find that plaintiff's claim does not sound in nuisance and grant defen-

dants' motion for summary judgment on that count.